## MATTHEW O'BRIEN, and others, *vs.* NORRIS, CALDWELL & CO.

The right of *stoppage in transitu,* existing at the time of an attachment laid on the goods, is not defeated or impaired by the attachment, nor altered by the sale of the goods, by an order of court, under the Act of 1839, ch. 39.

Such order of sale is a mere interlocutory proceeding, the effect being simply to convert the goods into money, which remains in the hands of the sheriff, to await the determination of the attachment, subject to any claims that might have been asserted against the goods themselves.

The filing, by the vendors, of a claim in the attachment case, to the fund in court, being the proceeds of the goods sold under the court's order, is a sufficient exercise of the right of *stoppage in transitu.*

The right of *stoppage in transitu* is not defeated by showing that the vendee was actually insolvent at the time of the purchase, unless it be shown that such insolvency was known to the vendor, and that he contracted with such knowledge.

The validity of the right of *stoppage in transitu* depends entirely on the bankruptcy or insolvency of the vendee, but it is not necessary that it should be a technical insolvency—if a stoppage of payment by the vendee be proved, it is sufficient.

If the insolvency of the vendee, at the time of the purchase, be known to the vendors, and they contract with that knowledge, they cannot assert the right; to entitle the vendors to the right, the insolvency of the vendee must come to their knowledge *after the sale.*

Where parties sell goods on a credit, the presumption of law, in absence of proof to the contrary, is, that they believed the purchaser to be solvent and able to pay for them.

APPEAL from the Superior Court of Baltimore City.

*Attachment* on warrant, issued on the 30th of September 1854, by the appellants against Turner and Barker, their non-resident debtors, trading under the firm of I. N. Turner & Co., returnable on the second Monday of January following, and returned, "Attached as per schedule—goods sold under order of court." On the 15th of January 1855, during the same term, the appellees filed their claim to certain of the goods mentioned in the schedule annexed to the return, and to the proceeds thereof in the hands of the sheriff, and resisted condemnation of the same, by pleas that said goods, at the time the attachment was laid, were not the goods of

the defendants in the attachment, but were the goods of the claimants. The case was tried upon issues joined on these pleas.

*Exception.* The plaintiffs proved the execution of the promissory note of I. N. Turner & Co. in their favor, on which their attachment was issued, dated March 14th, 1854, at six months, for $1140.65, and that Turner was in the habit of buying goods in Baltimore, that he resided in Virginia, where he traded under the name of I. N. Turner & Co., and had a partner there by the name of Barker.

The claimants then proved that, on the 27th of September 1854, Turner bought of them, on six months' credit, certain groceries to the amount of $675.10; that, by Turner's direction, these goods were boxed and addressed to him at Columbiana, Fluvana county, in Virginia, and sent to the steamboat wharf in Baltimore, and put on board the steamer sailing thence to Richmond; that on the 30th of September 1854, the attachment in this case was issued, and also two others, out of the Common Pleas, against I. N. Turner & Co., at the suit of other parties, which attachments were levied on the goods on said boat, sold by the claimants, and other goods sold to Turner on the 27th of September 1854, by other merchants in Baltimore; that about the 1st of December 1854, on the application of the plaintiffs in all these attachments, all said goods were sold, by authority of the Common Pleas and Superior Court, acting under the provisions of the Act of 1839, ch. 39, and that the remaining proceeds, after satisfying the attachments from the Common Pleas, are now in the hands of the sheriff.

The claimants further proved that Turner, as a country merchant, was in Baltimore about the 16th of March 1854, and made various purchases at that time on six months' credit; that he then bought of the plaintiffs to the amount of their note in proof, and of other parties, to the amount of $1145, the obligations for which all fell due about the 16th of September 1854, and were none of them paid, but were, in fact, all lying over when he made his purchases from the claimants, and the other Baltimore merchants, of the goods

attached. They further proved, by Joseph C. Whitney, that at the time of the purchase of the goods from the claimants, Turner owed witness $90, which he had promised to pay in September, when he came down for his goods, and having gone to see him, at his hotel, he told witness he would see and pay him before he went, but he left the city without doing so, and witness sent his account to a lawyer for collection, who returned him word that it was worthless, and he has not yet obtained it; that on the 27th of September 1854, Turner owed other debts to a large amount, and all of his creditors were treated in the same way, and witness believed that Turner was notoriously insolvent and unable to meet his liabilities at the time he purchased the goods from the claimants and up to the time of the laying of the attachment, and of the filing of the claim in this cause. The claimants then offered the following prayer:

If the jury shall find from the evidence in this case, that the articles of merchandise mentioned in the claim of the claimants were sold on the 27th of September 1854, by them to Isaac N. Turner, one of the defendants in the suit of the plaintiffs, on a credit of six months, and by the directions of said Turner, said merchandise was, by these claimants, packed and directed to said Turner, by his address being written thereon, and were, in pursuance of the instructions of said Turner, sent to a vessel lying at one of the wharfs of Baltimore city, to be transported and delivered to said Turner, at his place of business in Virginia, and that said merchandise was afterwards, with other property, seized by the sheriff, under the attachment in this case, on board of said vessel at said wharf, and that said property was sold by the sheriff, under the order of this court, and if the jury shall further find that at the time these claimants sold said goods to said Turner, he, the said Turner was insolvent, and that said insolvency continued to the time of the attachment, then these claimants are entitled to a verdict.

The plaintiffs then offered a prayer, that in order to entitle the claimants to recover upon the issues in this cause between them and the plaintiffs, on the ground of their right, as ven-

dors, to stop the goods in controversy, it is necessary that the jury should find that the insolvency of the vendee, Turner, occurred after the sale of said goods to him, and before the interposition of any claim to the same by the claimants.

The court (LEE, J.) granted the claimants' prayer, and rejected that of the plaintiffs, and the latter excepted to the granting of the prayer of the claimants, and the verdict and judgment being in favor of the claimants, the plaintiffs appealed.

The cause was argued before LE GRAND, C. J., ECCLES-TON and BARTOL, J.

*Wm. F. Frick,* for the appellants, argued:

1st. That under the circumstances of the sale, by the appellees to Turner, the title to the goods vested in the latter. They sold to him unconditionally, and on credit, and marked and delivered the goods as directed. This passed the right of property and possession to the vendee, and they became his goods, subject only to the vendor's right (if subsequent events should justify it) to stop them *in transitu.* This point was not disputed below and cannot be here. There was nothing of fraud or misrepresentation shown in the case, which could render the sale void *ab initio,* and there is nothing to support the claim of the appellees upon the ground that *no title passed,* by reason of the fraud, concealment, or misrepresentation of Turner. *Chitty on Cont.,* 406. 1 *Greenlf's Rep.,* 376, *Cross vs. Peters.* 2 *Mason,* 236, *Conyers vs. Ennis.* 9 *G. & J.,* 244, *Powell vs. Bradlee.* 10 *G. & J.,* 246, *Harris vs. Alcock.*

2nd. If then the claim can be supported, it must be on the ground of a right to *stoppage in transitu.* This does not proceed upon a right to rescind the contract and revest the title in the seller. It is only a continuation and enlargement of the seller's ordinary lien, and must be exercised strictly within prescribed limits. And whatever uncertainty and indefiniteness may be found in the early cases in the descrip-

tion of this somewhat anomalous right it is now well settled: 1st. That the insolvency of the vendee, which creates the right of stoppage *in transitu*, must not be a general inability to pay debts, but either a technical insolvency, or an insolvency evidenced by some overt act, as stoppage of payment, absconding, &c. 1 *Parsons on Cont.*, 476, *and notes.* 1 *Smith's Lead. Cases*, 903. 2nd. That the right does not exist by reason of such insolvency *before* the sale, but that the insolvency, as described, must arise, or occur, *after* the sale and *before* the *transitus* is at an end. In other words, if before the sale there has been some overt act of insolvency by the buyer, the *discovery* of the fact subsequently by the seller does not give him the right to stop *in transitu*. He is in such case without remedy, so far as the technical right of stoppage *in transitu* is concerned, and must take the consequences of his want of prudence in making a sale and inchoate delivery without proper previous inquiries. It is not worth while to argue that the reason would seem to be as good, why a seller should have the right to stop *in transitu* in case of insolvency *prior* to the sale which he did not discover till *afterwards*, as in a case where the insolvency *occurred afterwards*, and was then discovered. The answer is simply, the right is an anomalous one, and confined in its exercise within narrow limits, and it does not extend so far. We might as well argue that there is no good reason why they should be limited to the *transitus*. Good morals and fair dealing would seem to require that the right should reach even *into the hands* of the buyer until he has *bona fide* parted with the goods. But, as before, the answer is simply the right has not been adjudged to extend so far. The court are respectfully referred to the learned and able decision of *Storrs, J.*, in delivering the opinion of the court, in *Rogers vs. Thomas*, 20, *Conn.*, 53, which is quoted with approbation in 1 *Parsons on Cont.*, 478, and *note* (*o*) and which, unless overruled, is conclusive of this case.

3rd. Even supposing the claimants had a right to stop *in transitu*, they have never properly exercised it. The filing of their claim in court does not assert the right—it

sets up a claim of title. It may reasonably be questioned whether they ought not to have given notice of stoppage to the sheriff *before* the goods were sold, and passed out of his possession. But even if such sale did not defeat the right there should have been notice to the sheriff as custodian of the goods, and the proceeds of their sale, and then a motion to *quash the attachment*. That was the regular and proper course. In filing their claim as they did, and making issues on which the jury were sworn, they put the case on the ground that they were the *owners* of the goods at the time of the attachment laid, and they could only meet that issue by proof that *no title passed*, or that it *revested*. But the right to stop does not rescind the sale; it leaves the right of *property* in the vendee, and the right of *possession* only in the vendor by way of lien. 1 *Parsons on Cont.*, 477 to 481, and *notes.* 6 *G. & J.*, 201, *Ranahan vs. O'Neale.*

4th. The court's instruction, as granted, is obviously defective. It proceeds on this theory: That if the jury should find that the claimants, on the 27th of September 1854, sold goods to Turner on a credit of six months, and packed, and directed, and delivered them at the Richmond boat, as directed by Turner, and that on the 30th of September 1854, these goods were attached by the creditors of Turner and sold by the sheriff, then the claimants were entitled to the proceeds of these goods, provided, *at the time of the sale, Turner was insolvent, and his insolvency continued till the attachment.* On what conceivable principle of law could such an instruction be justified? It is impossible to say whether it proceeds upon the ground of fraud in the sale, or of the vendor's right to stop *in transitu*. If, on the former, it ignores the essential questions, as to the *intention* of the vendee and *knowledge* of the vendor. If on the latter, it throws out of view altogether the vital question whether the right of stoppage *was ever exercised,* and how and when? 9 *G. & J.*, 244, *Powell vs. Bradlee.* Even supposing, that upon all the facts, if the jury believed them to be true, the claimants were entitled to a verdict, still this instruction, as given, did not meet the case fairly, or cover it sufficiently.

*Milton Whitney* and *Jno. L. Thomas* for the appellees.

Only one point appears upon the record, as having been before the court below, and is raised by the prayer of the appellants. The question is, should the jury have been instructed that it was necessary for them to find that the insolvency occurred *after* the sale of the goods? We insist they should not have been so instructed, that the ruling of the court was right, and any other would be antagonistic to those principles of law upon which the doctrine of stoppage *in transitu* is founded. This doctrine is founded on principles of natural justice and equity; it is a creature of a court of chancery and the law lends its aid to carry out this enlarged rule of equity. *Abbott on Shipping*, (*7th Amer. Ed.*,) 650, 654, 656. 2 *Kent*, 540, 541.

The claimants here were vendors of the goods, and, therefore, the parties entitled to exercise this right, and the goods were in a position to be stopped *in transitu*, as they had not been actually delivered to the vendee, nor had they arrived at their place of destination. 2 *Kent*, (*5th Ed.*,) 545. The vendors in this case have exercised that right; no particular form is necessary; it is not necessary that the vendors should actually obtain possession. 2 *Kent*, 542. *Abbott on Shipping*, 666. *Chitty on Cont.*, (*6th Amer. Ed.*,) 463. They took the only course left them to assert this claim. The attachment authorized the sheriff to take the goods of Turner and Barker, and he took not only their goods but these sold by these claimants. They were in the custody of the court, and the claimants had a right, and it was their duty, to come into court and make their claim, and there assert it. 10 *Md. Rep.*, 14, *Trieber vs. Blocher.* 6 *G. & J.*, 298, *Ranahan vs. O'Neale.* The attachment does not defeat the right of the vendor to his stoppage *in transitu*. *Abbott on Shipping*, 663. 1 *Camp.*, 282, *Smith vs. Goss. Chitty on Cont.*, 436. 8 *Pick.*, 198, *Naylor vs. Dennie.* 15 *Wend.*, 137, *Buckley vs. Furniss.* 14 *Penn. State Rep.*, 48, 53, *Hays & Black vs. Mouille & Co.* 17 *Wend.*, 504, *Buckley vs. Furniss.*

The attachment not defeating the vendors' right of stop-

page *in transitu*, they resorted to the only method known to the laws of Maryland to assert that right, and a sale of the goods as perishable articles, under the Act of 1839, cannot be so construed as to alter or affect the *rights of parties*, or change their relations; they were to stand the same as before; the *proceeds* are made to represent the property, and the Act was passed to protect the parties in interest from loss on perishable articles, not to affect or change their rights.

The jury found that the party was *insolvent* at the *time* he purchased the goods, and so continued up to the time the vendors asserted their claim to stoppage *in transitu*. It is impossible to tell the precise time at which any man becomes insolvent. The party *was* insolvent at the *time* he made the purchase, the *knowledge* of which came to the *vendors* after the sale and before *actual* delivery. And if an insolvency occurring *after* the sale and before the delivery, vests this right in the vendor, how much stronger upon every rule of *justice and equity*, upon which this rule is founded, would be the reason of such a right where the *actual* insolvency existed at *the time* of sale? 15 *Wend.*, 137, 143, *Buckley vs. Furniss*. 14 *Penn. State Rep.*, 51, *Hays & Black vs. Mouille & Co.* 1 *East.*, 523, *Inglis, et al., vs. Usherwood.* 1 *Holt's N. P. Cases*, 338, *Litt. vs. Cowley.* 2 *Man. & Granger*, 812, *Wilmshurst vs. Bowker*.

BARTOL, J., delivered the opinion of this court:

The fund in controversy is the proceeds arising from the sale of certain goods, taken under an attachment, at the suit of the appellants against Isaac N. Turner, their non-resident debtor. To this fund, the appellees filed their claim, upon the ground that, as vendors of the goods to Turner, they had the right to *stop them in transitu.*

If the right of *stoppage in transitu* existed in the appellees, at the time the attachment was laid, and when their claim was filed; then, in the judgment of this court, their right could not be defeated or impaired by the attachment. *Smith vs. Goss*, 1 *Camp.*, 282. *Naylor, et al., vs. Dennie*, 8 *Pick.*, 199. *Buckley vs. Furniss*, 15 *Wend.*, 137, 144,

*Butler vs. Woolcot*, 2 N. R., 64.   *Nicholls vs. Lefeuvre*, 2 *Bing.*, N. C., 83.   *Hays & Black vs. Mouille & Co.*, 14 *Penn. State Rep.*, 48.

Nor could the rights of the parties be altered by the sale of the goods, under the court's order.   That order was a mere interlocutory proceeding, passed under the Act of 1839, ch. 39, the effect of which was to convert the goods into money, which remained in the hands of the sheriff, to await the de·termination of the attachment, subject to any claims that might have been asserted against the goods themselves.   There is no force in the objection made by the appellants, that the right of stoppage, even if it existed in this case, has never been exercised. "It is not requisite," (says *Kent, vol.* 2, *page* 543 *marg.*,) "that he (the vendor) should obtain actual possession of the goods before they come to the hands of the vendee, nor is there any specific form requisite for the stoppage of goods *in transitu;* thought it is well settled that the bankruptcy of the buyer is not, of itself, tantamount to a *stoppage in transitu.*   But a demand of the goods of the carrier, or notice to him to stop the goods, or an assertion of the vendor's right by an entry of the goods at the custom house, or a claim and endeavor to get possession, is equivalent to an actual stoppage of the goods."   See *Northey & Lewis vs. Field*, 2 *Esp. Rep.*, 613, and the other authorities referred to in *Note (a.)* 2 *Kent*, 543 *marg*.

Being of the opinion that the filing of the claim to the fund in court, by the appellees in this case, was a sufficient exercise of the right of *stoppage in transitu*, if such a right existed, it remains only to examine whether, under the facts and circumstances enumerated in the appellees' prayer, they were entitled to· exercise such right.

The right of *stoppage in transitu* is thus defined by *Chancellor Kent, vol.* 2, *page* 540 *marg*.

"It is the right which the vendor, when he sells goods on a credit to another, has, of resuming the possession of the goods while they are in the hands of a carrier or middleman, in their transit to the consignee or vendee, and before they arrive into his actual possession, or at the destination which

he has appointed for them, on his becoming bankrupt or insolvent."

The same author says, (page 542, *marg.*): "The right came from courts of equity, and was first established in *Wiseman vs. Vendeputt*, 2 *Vern. Rep.*, 203, and its apparent equity recommended the adoption of it in the courts of law, as a legal right. It would be very unreasonable to allow the goods of the vendor to be appropriated to the payment of the creditors of the vendee, who fails before payment, and before the goods have actually reached him."

This right is now firmly established in the law, and is greatly favored by the courts, as "tending to the furtherance of justice." 7 *Term Rep.*, 445. 1 *East.*, 515. There are, however, certain prescribed limits to the right, and the question here is, whether the facts and circumstances of this case, as they are enumerated in the court's instruction, and found by the jury, were sufficient to authorize the appellees to exercise the right? On this question, the particular objection of the appellants is directed against that part of the court's instruction which relates to the insolvency of Turner, the vendee. The jury were directed, if they should find "*that at the time said Norris, Caldwell & Co. sold said goods to said Isaac N. Turner, he, the said Turner, was insolvent, and that said insolvency continued to the time of the attachment,*" then, if they found the other facts stated in the prayer, the claimants were entitled to recover.

It has been contended that this instruction was erroneous; because it is said, "the right of *stoppage in transitu* exists only when the insolvency has arisen or occurred *after the sale*, and does not exist where the vendee was insolvent at the time of the sale." In support of this view, the appellants' counsel has referred to the case of *Rogers, et al., vs. Thomas*, 20 *Conn.*, 53.

With the greatest respect for the learning and ability of the court which pronounced the judgment in *Rogers vs. Thomas*, we are compelled to dissent from the reasoning upon which it was founded; and are of opinion that the weight of reason

and authority is with *Mr. Justice Waite*, who delivered the dissenting opinion in that case.

A careful examination of the authorities has brought us to the conclusion, that the right of the vendor to stop goods in *transitu*, cannot be defeated by showing that the vendee was actually insolvent at the time of the purchase; *unless it be shown that such insolvency was known to the vendor, and he contracted with such knowledge.* See the opinion of *Waite, Justice*, on this point, 20 *Conn.*, 68, *et seq.*, and the authorities cited by him.

"The validity of the right depends entirely on the bankruptcy or insolvency of the vendee." 2 *Kent*, 543. 6 *Rob. Adm. Rep.*, 321, *the case of The Constantia.* In the case before us, there was sufficient evidence to authorize the jury to find the insolvency of Turner (the vendee) at the time of the attachment, and of the claim made by the appellees. It is not necessary that it should be a technical insolvency; if a stoppage of payment by the vendee be proved, it is sufficient. *Smith's Mer. Law*, 678, 3rd Am. Ed., note (a.)

If the insolvency of Turner, at the time of the purchase, was known to the appellees, and they contracted with that knowledge, such insolvency would not entitle them to rescind or vary their contract, or reclaim the possession of the goods. *Buckley vs. Furniss*, 15 *Wend.*, 142, 143. This court is all of opinion that, to entitle the appellees to recover, the insolvency of Turner must have come to their knowledge after the sale. This point was not distinctly put to the jury in the instructions granted. But, in the opinion of a majority of this court, there was no evidence legally tending to prove any such knowledge on the part of Norris, Caldwell & Co. at the time of the sale, and therefore it was unnecessary to call upon the jury to pass on that question. The presumption, both of reason and of law, in the absence of proof to the contrary, is, that when they sold the goods, on a credit, they believed the purchaser to be solvent, and able to pay for them. *Inglis, et al., vs. Usherwood*, 1 *East.*, 524. In the record before us, there is no evidence sufficient in law to rebut that presumption. Believing there was no error in the instruction given to the jury, the judgment will be affirmed.

The bill of exceptions presents no questions, except upon the instruction granted by the court; no exception was taken to the refusal of the court to grant the appellants' prayer; the point involved in it has, however, been necessarily decided in passing upon the instruction granted.

*Judgment affirmed.*

(Decided June 14th, 1860.)