J. ESTEY AND I. N. CAMP, Appellants, v. J. W. TRUXEL, DEFENDANT, AND JAMES S. CUMSTON, INTERPLEADER, Respondent.

### Kansas City Court of Appeals, March 28, 1887.

1. STOPPAGE IN TRANSITU—RIGHTS UNDER—WHEN TRANSIT BEGINS AND HOW LONG IT CONTINUES.—Until the goods shipped are *delivered*, to an *insolvent* vendee, they are subject, *in transitu*, to the right of the vendor to *countermand* the sale and reclaim the property. The *transit* is held to continue from the time the vendor parts with the possession, until the purchaser acquires it *actually—constructive* possession is not enough.

2. ——— RIGHTS OF VENDOR AGAINST ATTACHING CREDITOR—POSSESSION OF VENDOR.—This right of the vendor is not defeated by the mere seizure of the goods, under writ of attachment against the vendee, before the depot agent at place of destination had delivered them to the consignee, or to another person designated by vendor and vendee. A demand of the goods of the carrier, or notice to him to stop the goods, or an assertion of the vendor's right, by an entry of the goods at the custom house, or a claim and endeavor to get possession, is equivalent to an *actual stoppage* of the goods.

3. PRACTICE—JUDGMENT FOR RIGHT PARTY.—When the judgment was for the right party, and the instructions asked by appellant and refused were faulty, and the instructions complained of, given to respondent, are less favorable than he was entitled to, this court will not interfere.

APPEAL from Pettis Circuit Court, HON. JOHN P. STROTHER, Judge.

*Affirmed.*

Statement of case by the court.

On the twenty-ninth day of December, 1884, the plaintiff filed suit in attachment against the defendant Truxel. Under the writ, the sheriff, about noon of the third day of the next month, seized, as the property of Truxel two pianos, then in charge of the railroad agent, at the depot in the city of Sedalia. At the return term of the action Cumston interpleaded, claiming to be the owner and entitled to the possession of the said pianos. Verdict and judgment for interpleader, from which plaintiff has appealed.

The evidence showed about the following state of facts : On the seventeenth day of December, 1884, Truxel, a piano merchant at Sedalia, wrote the following letter to Hallett & Cumston, at Boston, Massachusetts. (Cumston was doing business under the firm name of "Hallett & Cumston"):

"SEDALIA, Mo., December 17, 1884.
"*Messrs. Hallett & Cumston, Boston, Mass.*

"DEAR SIRS :—I am in need of three, style A, of your pianos, and if you will send them at once I will return you my note at four months with first class indorser. This party would furnish me with the cash were it comeatable at this time. And on my past due paper, I will help you and get it all up as soon as money matters ease up here. It is simply impossible to make any collections, and banks cannot extend any accommodations at this time. Please ship at once, and oblige.
"Yours truly,
"J. W. TRUXEL."

About the twenty-third of that month Cumston accordingly shipped the pianos to Truxel at Sedalia, by

delivering the same for shipment to the Merchant's Dis- patch Transportation Company, etc., at Boston. The bill of lading was forwarded to Truxel on the twenty- ninth day of December, 1884, and before the pianos had reached Sedalia, Truxel wrote the following letter to Cumston :

"SEDALIA, Mo., December 29, 1884.

"*Messrs. Hallett & Cumston, Boston, Mass.*

"DEAR SIRS : — The pianos (three A) ordered, if shipped, please notify the R. R. Agent this place to deliver to A. H. Randell, trustee. He will make you good note. Mr. Randell owns real estate in this city worth about $50,000, so you will find his paper O. K. I will do all I possibly can in selling your goods. I will, I hope, before long, be in shape to go right on myself. Please give this your prompt attention, and greatly oblige,

"Yours truly,

"J. W. TRUXEL."

Truxel, on the second day of January, 1885, sent a night dispatch to Cumston, to the following effect: "Please wire freight agent this place to deliver pianos to A. H. Randell, trustee."

At 11:37 o'clock, A. M., on the third of January, Cumston sent the following answer by telegram : "Freight Agent has been notified. Have Randell pre- sent bill of lading and he will receive pianos."

Cumston also testified, that on receipt of the letter of December 29, he saw the agent of the Merchant's Dispatch Transportation Company, and directed him to telegraph the railroad agent at Sedalia to deliver the pianos to Randell. It does not appear that this dis- patch was received at Sedalia, if ever sent. The evi- dence, on the part of interpleader, tended to show that on the twenty-ninth of December, Truxel made the arrangement with Randell, indicated by his letter to Cumston, by which Randell agreed to take the pianos and pay for them on arrival and delivery to him.

Randell testified that when he went for the pianos they had been seized under the writ of attachment, and that he was not to pay for them until delivered to him.

The court gave, on behalf of interpleader, at his request, the following instructions:

" If the jury believe from the evidence that Truxel ordered the pianos in controversy from interpleader, to be shipped from interpleader from Boston, Massachusetts, to Sedalia, Missouri, and that Truxel afterwards became so much embarrassed, financially, that he could not pay for same; and, thereupon, Truxel and interpleader made an agreement, to the effect that the pianos should be transferred from Truxel to Randell, and that Randell agreed to this, and agreed to take said pianos and pay for same when received by him, and that, in pursuance of these agreements, interpleader ordered the railway company to deliver said pianos to Randell, and that before such delivery they were attached, the jury will find the issues for the interpleader."

The court, of its own motion, gave the following instructions:

" 1. If the jury believe, from the evidence, that Truxel ordered the pianos from the interpleader, and they were shipped, pursuant to said order, to said Truxel, at Sedalia, and that, whilst they were in the hands of the railroad or express company, subject to his order at Sedalia, they were attached at the suit of plaintiffs, Estey & Camp, then your finding should be for said Estey & Camp, unless you further believe the contract of purchase, by Truxel, had been rescinded by agreement of interpleader and Truxel, before the goods were attached, or that the interpleader had agreed to substitute said Randell (with his consent) as purchaser in place of Truxel.

" 2. If the jury believe, from the evidence, that Truxel ordered the pianos from the interpleader, and that they were shipped under such order to Truxel, at

Sedalia, and that before they arrived at Sedalia, and before they were paid for, said Truxel contracted with one Randell to take them, and pay for them when delivered to him, and that the interpleader was notified of this agreement and consented to it, and agreed to take said Randell, instead of Truxel, as the purchaser, and that, afterwards, and before their delivery to Truxel, the pianos were attached, at the suit of Estey & Camp, as the property of the defendant, Trúxel, and the delivery to Randell thereby prevented, then your finding will be for the interpleader."

E. J. Smith and W. R. Aldrich, for the appellants.

I. Did interpleader have a right of stoppage *in transitu*? We say he did not, for he sold the goods to Truxel, knowing of his embarrassed condition. 1 Smith's Leading Cases [6 Am. Ed. 1886] 1101, *903, and cases cited; *Buckley v. Furniss*, 15 Wend. 137; *Benedict v. Schaettles*, 12 Ohio (N. S.) 515; *Reynolds v. Railroad*, 43 N. H. 580; *Stephens v. Wheeler*, 27 Barb. 658; *O'Brien v. Norris*, 16 Md. 122; *Heins v. Railroad*, 82 Mo. 233. But any way he did not attempt to stop *in transitu*.

II. Was the contract of purchase by Truxel rescinded? We say it was not. On the contrary there was simply an attempt to substitute " Randell, Trustee," instead of Truxel, as purchaser, and this " trustee " was for Truxel. He was trustee for no other.

III. Even if any one could interplead and recover these goods, it is Randell, and not Cumston. Title passed out of interpleader by the shipment and sending of the bill of lading and bill of sale to Truxel. Interpleader has never attempted to reinvest himself with title. Quite the contrary. He has, until the bringing of this suit, been trying to vest it in Truxel, or Randell, trustee for Truxel.

IV. The instructions given for the interpleader are

on the theory, that if the contract had been rescinded, or Randell substituted, with consent of him and the vendor and vendee, the interpleader should recover. This is not the law. They further go on the theory, that interpleader must have notified the railroad company at point of destination; as to this, there was *no evidence* on which to base it.

V. The instructions asked by plaintiffs and refused should have been given, as properly declaring the law of this case.

WILKERSON & MONTGOMERY, for the respondent.

I. Truxel had a right to prefer Guenther by the chattel mortgage; it was not fraudulent on its face, and there is no evidence of fraud in the record. *Sampson v. Shaw*, 19 Mo. App. 274. The right of stoppage *in transitu* was complete and perfect in interpleader. *Buckley v. Furniss & Stickney*, 15 Wend. 142; Hutchinson on Carriers, sect. 413; *O'Brien v. Norris*, 16 Md. 122. The interpleader did everything necessary on his part to effect the stoppage. Hutchinson on Carriers, sect. 410–412. There was a complete rescission of the contract and the title to the goods vested in the interpleader. *Ash v. Pitman*, 1 Hill, 309.

II. The filing of the interplea was a sufficient exercise of the right of stoppage *in transitu* in ample time to secure the interpleader in his right. There never has been any delivery, and the levy of the attachment and sale of the goods, thereunder, does not defeat interpleader's claim. Benjamin on Sales, 1069, 1070; *Buckley v. Furniss & Stickney*, 15 Wend. 143; *Durgy Cement & Lumber Co. v. O'Brien*, 123 Mass. 13; *O'Brien v. Norris*, 16 Md. 152; *Benedict v. Schaettles*, 12 Ohio St. 515; *Wood v. Yeatman*, 15 B. Mon. 270.; *Woodruff v. Noys*, 15 Conn. 335; *Hays v. Monill*, 14 Pa. St. 48; *Blackman v. Pierce*, 23 Cal. 508; Hilliard on Sales, 217; *Hines v. Railroad*, 82 Mo. 236.

III. The right of interpleader is the elder and pre-

ferable lien, eminently just and highly favored in the law. 2 Kent's Com. [11 Ed.] 514; *Cochran v. Campbell*, 30 Pa. St. 254. And it is just and proper to award it now.

Philips, P. J.—I. The law is, that until the goods shipped were delivered to the insolvent vendee, they were subject *in transitu* to the right of the vendor to countermand the sale and reclaim the property. Benjamin on Sales, pages 1069, 1070, lays down the rule thus : " The transit is held to continue from the time the vendor parts with the possession until the purchaser acquires it ; that is to say, from the time the vendor has so far made delivery that his right of retaining the goods and his right of lien * * * are gone, to the time when the goods have reached the actual possession of the buyer. * * * The stoppage *in transitu* is called into existence for the vendor's benefit, after the buyer has acquired title and right of possession, and even constructive possession, but not yet actual possession." This is cited approvingly by Sherwood, J., in *Heins v. Transfer Company* (82 Mo 236), he adds : " And the insolvency of the purchaser is a sufficient justification for exercising the seller's right, though the sale be unconditional and time be given to the purchaser."

This right of stoppage is not precluded until the goods have actually reached the buyer, or under circumstances equivalent thereto. 2 Kent Com. 544; *Buckley v. Furniss*, 15 Wend. 137.

Nor was this right of the vendor defeated by the mere seizure of the goods under writ of attachment before the depot agent at Sedalia had delivered them to the consignee, or before Randell had made demand for them. *O'Brien v. Caldwell*, 16 Md. 122, and citations. Kent, volume 2, page 543, says :

" It is not requisite that the vendor should obtain actual possession of the goods before they come to the hands of the vendee, nor is there any specific form requi-

site for the stoppage of goods *in transitu*. But a demand of the goods of the carrier, or notice to him to stop the goods, or an assertion of the vendor's right, by an entry of the goods at the custom house, or a claim and endeavor to get possession, is equivalent to an actual stoppage of the goods." And in *O'Brien v. Caldwell* (*supra*), it is held that it was a sufficient assertion of this right when the interplea was filed.

It is beyond dispute that Truxel notified Cumston on the twenty-ninth of December, before the goods had reached Sedalia, of his inability to pay for them, and advised him of the fact that Randell would take them, if agreeable to the vendor. There is, likewise, little ground to question that this letter and the telegram of January 2 were received by Cumston prior to the seizure of the goods by the sheriff; and just as little ground for controversy that Cumston sent his telegram accepting the arrangement with Randell prior to the seizure of the goods. That telegram was sent from Boston at 11 : 37 A. M. Allowing for the known difference in time between Boston and Sedalia, that was before 10 A. M., whereas, the seizure was not before noon of that day. Cumston also notified the carrier at Boston not to deliver to Truxel, but to Randell. The company at Boston, with whom the contract of shipment was made, was the proper company to notify. Hutch. on Car. 410, 412. The vendor cannot be presumed to have then known at what point the goods were. He was advised, however, by the telegram, that they had not been delivered to the consignee. This left his right of stoppage *in transitu* intact. Indeed, we do not perceive that this question of the sufficiency of the notice to the railroad company properly arises in this case, because there never was any delivery to the vendee.

When Cumston telegraphed his acceptance of the proposition to turn the pianos over to Randell, the minds of the contracting parties had met, and the arrangement was consummate. *Taylor v. Ins. Co.*, 9 How.

390 ; *Keim v. Ins. Co.*, 42 Mo. 41. And that was an equivalent overt act to stop the delivery to Truxel. It precluded the right of Truxel, as against the interpleader, to demand and receive the pianos, and was equally binding on the attaching plaintiffs, who can occupy no better relation as purchasers under Truxel. They would simply acquire all the right and interest he had at the time of the attachment, and no more.

II. It is urged by appellants that Truxel was insolvent at the time of the purchase, and this fact, being known to the vendor, defeated his right of stoppage *in transitu*. The proposition of law is correct, but it is not supported by the facts. The only information, so far as this record discloses, that Cumston had of the financial condition of Truxel was conveyed in the letter of December 17. That letter shows nothing more than that Truxel had not met promptly his notes to interpleader, and assigns very plausible reasons for the delinquency. This might amount to a technical insolvency under the bankrupt law, but it has no place in the ordinary affairs between mercantile men. *Potter v. McDowell*, 31 Mo. 73.

As said in *O'Brien v. Caldwell* (*supra*), "The presumption of both law and reason, in the absence of proof to the contrary, is, that, when they sold the goods on a credit, they believed the purchaser to be solvent and able to pay for them."

III. It was suggested in argument at this bar, by counsel for appellants, that this cause was not tried in the lower court on the theory of the right of stoppage *in transitu*. He seems to have thought differently in the trial court, for the first instruction asked by him was predicated of a failure "to stop the goods in transit." Be this, however, as it may, while we think the instructions given by the court unnecessarily restricted the right of recovery by the interpleader to the fact of a rescission of the sale, by the substitution of Randell, be-

fore the goods were attached, we do not see how appellants were injured thereby.

By their verdict the jury found, either that, before the levy of the writ of attachment, the sale to Truxel had been rescinded, or that the interpleader had agreed to substitute Randell, with Randell's assent. There was certainly evidence to support this finding. These facts having been thus found, they amount in law to the exercise of the right of stoppage *in transitu*, before the goods were levied on or delivered to the vendee. So, while the court might have declared the law in different form, and certainly far more favorably to the interpleader, the substantial facts are predicated and found.

The declarations of law asked by plaintiffs were so clearly faulty, as applied to the facts of this case, that it is unnecessary to review them. This judgment was for the right party; the interpleader got but his own, while the plaintiffs are seeking to reap where they have not sown, in so far as these pianos are concerned.

The judgment of the circuit court is affirmed. Ellison, J., concurs; Hall, J., absent.