LONG BELL LUMBER COMPANY, Respondents, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, June 13, 1914.

1. CONVERSION: Sales: Common Carriers: Vendor and Vendee. Where a fraudulent vendee sells and delivers the property acquired by fraud to an innocent purchaser before the vendor discovers the fraud and elects to rescind the sale, the title thus acquired by the plaintiff, an innocent purchaser, coupled with the actual delivery of the property to the defendant for its benefit, cuts off the right of stoppage *in transitu* which necessarily died with the close of the original transportation. And having clothed the fraudulent vendee with the apparent legal title and the *jus disponendi* of the property, the original vendor could not exercise its rights to rescind and to reclaim the property as against a good faith purchaser for value from such fraudulent vendee.

2. ———: ———: Stoppage in Transitu. The right of stoppage *in transitu* is but an extension of the vendor's lien on the goods for the payment of the purchase money and continues until the goods have actually reached the buyer, or under circumstances equivalent thereto.

Appeal from Jackson Circuit Court.—*Hon. Jas. E. Goodrich,* Judge.

AFFIRMED.

*New & Krauthoff, John N. Davis* and *P. E. Reeder* for appellant.

*W. R. Thurmond, H. A. Poorman* and *Flavel Robertson* for respondent.

JOHNSON, J.—In substance the cause of action alleged in the petition is the conversion by defendant, a common carrier, of a carload of shingles belonging to plaintiff. The answer interposes defenses the nature of which will appear in our statement and discussion of the case. A jury was waived and after hearing the evidence the court rendered judgment for plaintiff and defendant appealed.

Plaintiff is an extensive wholesale and retail dealer in lumber and one of its retail yards is at Wichita, Kansas. The manager of that yard was not restricted to purchasing lumber from plaintiff's wholesale department but had authority, which he exercised, to purchase in the cheapest market. On April 21, 1910, he purchased of G. T. Babcock, a lumber broker at Wichita, a car of shingles described as being in C. B. & Q. R. R. Co's car No. 92,690. Babcock was acting in good faith as the agent of the Bond-Foster Lumber Company which claimed to be the owner of the shingles. The managing officers of the Bond-Foster Company owned a controlling interest in the Powell Lumber Company, a concern engaged in the retail lumber business at Powell, Nebraska, and by its rating entitled to only a moderate credit. In March, 1910, the latter company purchased thirty or more cars of lumber from as many different wholesale dealers on the Pacific Coast and ordered them shipped to Powell, Nebraska. With the exception of two or three, all of these shipments were diverted at intermediate divisional points and resold at wholesale. The car in question was sold and consigned by the Coats-Larkin Shingle & Timber Co., a wholesale dealer at Raymond, Washington, and was delivered to the Northern Pacific Railroad Company at that place for transportation to Powell. A standard form non-negotiable bill of

lading was issued and mailed by the consignor to the Powell Lumber Company. After the bill reached Powell it was endorsed on the back "Powell Lumber Company by W. S. Stewart, M'g'r.," and on or about April 21, 1910, the bill was delivered to L. C. Adams a lumber broker at Kansas City who was doing business in the name of the Reliance Lumber Company. Adams claims he bought the shingles of the Bond-Foster Lumber Company. He was doing business with the "All Night & Day Bank" of Kansas City and being indebted to the bank, delivered the bill to it as collateral security. Bond of the Bond-Foster Company was an officer of that bank. Plaintiff would not pay for the shingles until it or defendant obtained possession of the bill of lading and Adams, at the request of the Bond-Foster Company invoiced the shingles to plaintiff and instructed the bank to deliver the bill on payment of the purchase price. The payment was made May 7th by plaintiff to the bank.

Defendant received the car from the Northern Pacific Railroad Company at their connecting point, carried it to Alliance, Nebr., and held it there pursuant to a written request from the Powell Lumber Company, dated March 26th, that it be held at that place for further shipping orders. On April 20th, the Powell Lumber Company directed defendant to call on the Reliance Lumber Company (Adams) for shipping instructions. On the next day the Powell Company notified defendant that it had been requested by the Reliance Company to reconsign the car from Alliance to plaintiff at Wichita. It was the custom of defendant not to divert a shipment without first obtaining the bill of lading, and on April 25th the agent of defendant at Kansas City, pursuant to orders from the Assistant Superintendent of Transportation, obtained the bill from Adams, who procured it from the All Night & Day Bank. Advised of the surrender of the bill of lad-

ing the Assistant Superintendent telegraphed the car accountant at Chicago, informing him of that fact and stating that unless ordered to the contarry, he would carry out the diversion instructions received from the Powell Company.

On May 7th, the Coats-Larkin Company, having received information that the Powell Lumber Company, the Bond-Foster Company and the All Night & Day Bank were engaged in a scheme to defraud, notified the agent of the Northern Pacific Railroad Company at Raymond, Washington, to "withhold delivery to consignee, The Powell Lumber Co., of Powell, Nebraska, from ourselves, the consignors, The Coats-Larkin Shingle & Timber Co., of Raymond, Washington, on March 20, 1910, of car and contents in C., B. & Q. No. 92690, destination as shown per original bill of lading, Alliance, Nebraska."

Before the receipt of this notice of the purpose of the consignor to exercise the right of stoppage *in transitu,* plaintiff had bought and paid for the shingles and the bill of lading had been surrendered to defendant for the sole purpose of diverting the car from Alliance to plaintiff at Wichita. Defendant did not carry out the instructions of the Powell Company but on receipt of a bond from the consignor protecting it against loss, recognized the notice of stoppage *in transitu* and subsequently disposed of the car pursuant to instructions from the consignor.

At the request of plaintiff the court made the following findings of fact: "First: That the plaintiff is an innocent purchaser for value of the bill of lading offered in evidence.

Second: That said bill of lading was issued in due course of business from the Northern Pacific Railroad Company to the Coats-Larkin Shingle & Timber Company.

Third: That said bill of lading was assigned, transferred and delivered in due course of business

from the Coats-Larkin Shingle & Timber Company to the Powell Lumber Company.

Fourth: That said bill of lading was assigned, transferred and delivered in due course of business from the Powell Lumber Company to the Reliance Lumber Company.

Fifth: That said bill of lading was assigned, transferred and delivered in due course of business from the Reliance Lumber Company, and the All Night and Day Bank, to the plaintiff by the delivery of said bill of lading to the defendant, at the request of the defendant, and for the express purpose of having the car load of shingles in question reconsigned to the Long-Bell Lumber Company at Wichita, Kansas.

Sixth: That there was no title to the goods in question shown in any other person than the Long-Bell Lumber Company subsequent to the receipt of said bill of lading by the Burlington Railroad Company and the court finds that said Burlington Railroad Company received said bill of lading on either April 25, or April 29, 1910.''

In declarations of law given at the request of plaintiff the court expressed the view ''that the delivery of the car of shingles in question by the Coats-Larkin Shingle & Timber Company to the Northern Pacific Railway Company, under the bill of lading in question, was equivalent to the delivery of said carload of shingles to the Powell Lumber Company, subject only to the right of Coats-Larkin Shingle & Timber Company to stop said shingles in transit and that the right of stoppage in transit by the Coats-Larkin Shingle & Timber Company, if any it ever had, must have been asserted before the plaintiff purchased said shingles on April 21, 1910, and in any event must have been asserted before the plaintiff issued its check in payment of said shingles on the 6th day of May, 1910. . . . that the Coats-Larkin Shingle & Timber Company had no right to stop said shingles in transit, so

far as the evidence in this case shows, and that its notice to the Northern Pacific Railway Company on May 7, 1910, to stop said shingles in transit constitutes no defense in favor of the defendant in this case.''

At the request of defendant the court found ''that the indorsement 'Powell Lumber Company, W. S. Stewart M'g'r.' on said bill of lading is a forgery and was not written on there by W. S. Stewart; that the indorsement 'Powell Lumber Company, W. S. Stewart, M'g'r.' was not written on said bill of lading by anyone authorized to do so by W. S. Stewart and that W. S. Stewart had authorized no one to make the indorsement on said bill of lading for him.''

From the evidence relating to the latter findings, it appears that the business of the Powell Lumber Company at Powell was that of a retail lumber and hardware merchant. When Bond and Foster obtained control of the company, Foster put Stewart, who was experienced in hardware but not in lumber business, in charge of the retail business. Stewart bought the hardware but not the lumber. Foster attended to that part of the business and Stewart had nothing to do with ordering the shingles in controversy or the other mentioned car lots of lumber purchased by the Bond-Foster Company in the name and for the account of the Powell Lumber Company. Foster made frequent visits to Powell and had charge of the correspondence relating to such transactions, and we think Stewart must have known that his name as manager was being used by Foster.

We are not unmindful of the rule that findings of fact made by the trial court in a law case should be accorded the same finality on appeal as the verdict of a jury, and must be allowed to stand whenever found to be supported by substantial evidence, but we do not regard the finding that the indorsement of the bill of lading by the Powell Lumber Company was made without authority from Stewart is supported by substan-

tial evidence. Stewart was used as a "straw man," knew that he was in such position, and knew that Foster was using his name in transactions of which he was being kept in ignorance. Foster was the real manager of the Powell Lumber Company, which was used as a cloak by the Bond-Foster Company for the fraudulent scheme by which the latter company made heavy and unwarrantable purchases of lumber without intending to pay for it, and resold it on the market, either in its own name or through some agency it selected and controlled. The indorsement of the bill of lading cannot be assailed on the ground of forgery or lack of authority from Stewart to Foster to sign his name as manager. That the sale of the shingles by the Coats-Larkin Company, the real defendant of this action, to the Powell Lumber Company was procured by fraud and, therefore, was voidable by the vendor, is the only reasonable conclusion that may be drawn from the evidence. On the discovery of that fraud the vendor had the option either to rescind the sale or ratify it, notwithstanding the fraud. It elected to rescind, as shown by its action in serving notice on the initial carrier to stop the car which had not been delivered to the Powell Lumber Company and was still in the custody of the connecting carrier. The right of stoppage *in transitu* is but an extension of the vendor's lien on the goods for the payment of the purchase money and "continues until the goods have actually reached the buyer, or under circumstances equivalent thereto." [Estey v. Truxell, 25 Mo. App. 238; Groc. Company v. Railroad, 138 Mo. App. 352.] As is said in the latter case: "It arises from the discovery by the vendor, during the *transitus,* of the insolvency of the vendee and the ordinary effect of its exercise is 'to vest in each party to the contract of sale the rights he had before the possession of the goods sold was delivered to the carrier.' "

The delivery of the shingles by the Coats-Larkin Company to the initial carrier was a delivery to, and vested the title of the property in the vendee, the Powell Lumber Company, subject to the right of stoppage *in transitu*, and if it could be rightly said that the notice of the option to exercise that right was given the carrier before the end of that transportation we would hold that defendant was justified in obeying the notice. But such was not the case. While invested with the legal title to the goods, subject only to the right of the vendor to rescind the sale on the ground of fraud, the Powell Lumber Company resold the shingles in the manner described, to plaintiff, an innocent purchaser for value without notice of the fraud or of any defect in the apparent title of the original vendee. The sum of the whole case is that a fraudulent vendee sold and delivered the property acquired by fraud to an innocent purchaser before the vendor discovered the fraud and elected to rescind the sale. The transportation to the original vendee ended at Alliance when the bill of lading was surrendered to and received by defendant for the purpose of reshipment to plaintiff. That act constituted a delivery of the car to plaintiff. The Powell Lumber Company lost all control over it and was succeeded as consignee by plaintiff. It was as though defendant had issued a new bill of lading to plaintiff for a successive and independent transportation of the car from Alliance to Wichita.

Regardless of the form and substance of the original bill of lading which was surrendered on the obvious theory that the diversion ended the old and began a new transportation, the sale of the shingles to plaintiff became complete and the legal title passed when plaintiff paid the purchase price and the Powell Lumber Company surrendered the bill to defendant with instructions to reship the car to plaintiff.

Though non-negotiable in form, a bill of lading is a symbol of the property being transported. Plain-

tiff did not obtain possession of the symbol in question which was surrendered as *functus officio* to the carrier but did acquire the legal title to the property it represented by purchase and sale and actual possession thereof by re-delivery of the property to the carrier, which accepted it as plaintiff's bailee, under an agreement to transport and deliver it into the hands of plaintiff. The possession of the property by defendant under such circumstances was the possession of plaintiff and since plaintiff had both the ownership and possession of the thing itself, its rights cannot be said to depend upon a symbol which had performed its office and lost all force before the right of stoppage *in transitu* was asserted by the original consignor.

The title thus acquired by plaintiff, coupled with the actual delivery of the car to defendant for its benefit, cut off the right of stoppage *in transitu* which necessarily died with the close of the original transportation. Having clothed the fraudulent vendee with the apparent legal title and the *jus disponendi* of the property, the original vendor could not exercise its rights to rescind and to reclaim the property as against a good faith purchaser for value from such fraudulent vendee.

A number of points are raised in the briefs that we do not think require special discussion. We have sufficiently answered the objections to the petition. There is no prejudicial error in the record and the judgment, being for the right party, is affirmed.

All concur.