EVANS GARDEN CULTIVATOR COMPANY, Respondent, v.
MISSOURI, KANSAS & TEXAS RAILWAY COMPANY,
Appellant.

Kansas City Court of Appeals, January 6, 1896.

1. **Sales**: STOPPAGE IN TRANSITU: ITS CONDITIONS. After the vendor
has delivered the goods sold to the carrier for delivery to the buyer,
he can on discovery of the buyer's insolvency retake the goods before
they reach the buyer's possession; but if the insolvency occurs and
is known before the shipment, he can not exercise the right.

2. ———: ———: TITLE. The delivery of goods to a common carrier
for transportation to the purchaser passes the title to the latter.

3. **Bills of Lading**: TITLE: PAROL TESTIMONY. Where the bill of
lading shows a general consignment and not a consignment to ship-
per's order or other reservation, it *prima facie* vests the legal title in
the consignee, and the bill of lading in this case is as consistent with
the parol testimony of the defendant as it is inconsistent with that of
the plaintiff.

4. **Trial Practice**: INSTRUCTIONS ON WHOLE CASE: DEFENSE. If a
party asks an instruction on the whole case, he must so form it as to
not exclude from the consideration of the jury the points raised by
the evidence of the adversary. The adversary is not bound to ask
instructions limiting such instruction.

5. ———: ABANDONMENT OF DEFENSE: INSTRUCTION ASKED. Where the
defendant asks an instruction as to certain matters of defense, he can
not be said to have waived such matters during the trial.

6. **Sales**: STOPPAGE IN TRANSITU: NOTICE: CARRIER. If there is no sale
to the consignee, notice to ship the goods *in transitu* must be given
the carrier to hold him liable where the bill of lading consigns them
generally.

*Appeal from the Pettis Circuit Court.*—HON. RICHARD
FIELD, Judge.

REVERSED AND REMANDED.

*George P. B. Jackson* for appellant.

(1) The attempt to prevent delivery was not intended as a means of securing payment for that shipment, but to bring the consignee, Evans, to time on another matter.    The law is as set forth in defendant's third instruction and the court erred in refusing it.    The evidence was such that under the law on this feature of the case, the finding should have been for the defendant, and this should cause a reversal of the judgment. 23 Am. and Eng. Encyclopedia, title, Stoppage in Transitu, p. 903; note in 29 Am. Dec. 386; Tiedeman on Sales, secs. 127, 135.  (2) The plaintiff knew before the goods were shipped, or even sold, that Evans was insolvent; hence, the defendant's first instruction should have been given, and obedience to the rule there correctly declared would have produced a verdict for defendant.    *Schwabacher v. Kane*, 13 Mo. App. 129; *Farrell v. Railroad*, 37 Am. and Eng. R. R. Cases, 704; Tiedeman on Sales, sec. 135; 2 Benj. on Sales, secs. 1229–1231; *Loeb v. Peters*, 63 Ala. 243; *Blum v. Marks*, 21 La. Ann. 268; *Obrien v. Norris*, 16 Md. 122; *Reynolds v. Railroad*, 43 N. H. 589; *Benedict v. Schaettle*, 12 Ohio St. 515.

*Charles E. Yeater* for respondent.

The doctrine of stoppage *in transitu* is not involved in this case.    The solvency or insolvency of Evans is immaterial.    The relation of seller and purchaser did not exist.    The shipment was from a business company to its traveling salesman, from whom the company had a right to withhold delivery if it so desired.    Hence the shipper in this case had a right to make any direction to the common carrier about its own goods that it saw fit, and appellant's authorities are not in point.

*Grove v. Brien,* 8 How. (49 U. S.) 439; *The Merrimack,* 8 Cranch (12 U. S.), 333; *The Frances,* 8 Cranch (12 U. S.), 418; *Hobbie v. Smith,* 27 Fed. Rep. 662, and cases cited.

SMITH, P. J.—The cause of action stated in the petition is that the plaintiff, a manufacturing corporation, delivered to the defendant, a common carrier, at its station in the town of Paris, in this state, twenty-five bundles of "patent garden cultivators," of the value of $250, consigned to J. B. Evans, to be transported over its said railway to the city of Waco, in the state of Texas. That the plaintiff, immediately after the said shipment and consignment, and before said goods had reached their destination, gave the defendant's agent at the latter place written notice not to deliver the same to the person named as consignee thereof, and to hold the same for plaintiff, subject to its order, and that defendant, wholly disregarding said notice, delivered the said goods to some person to plaintiff unknown, to its damage, etc.

The plaintiff had judgment in the circuit court, from which defendant has appealed.

The defendant, as a ground for the reversal of the judgment, insists that the trial court erred in its action refusing its first and third instructions, which declared, in effect, that if the plaintiff knew of the insolvency of the consignee before shipment of the cultivators to him, then plaintiff was not entitled to stop the delivery of said cultivators, nor was plaintiff entitled to have said cultivators stopped while in transit, because of any disagreement between it and the consignee, or because it was dissatisfied with the consignee's business methods, or his failure to remit on account of previous consignments, if there was no other reason therefor.

The last remedy which an unpaid vendor has

against the goods is stoppage *in transitu*. This is a right which arises solely upon the insolvency of the buyer and is based on the plain reason of justice and equity, that one man's goods shall not be applied to the payment of another man's debts. If, after the vendor has delivered the goods out of his possession and put them in the hands of the carrier for delivery to the buyer, he discovers the buyer is insolvent, he may retake the goods, if he can, before they reach the buyer's possession. Benjamin on Sales, sec. 828. The conditions upon which this right may be exercised are: *First*, that the goods must be unpaid for; *second*, they must be in transit; *third*, they must be in the possession of a third person; *fourth*, the buyer must be insolvent. Tiedeman on Sales, sec. 127, and cases there cited.

*But if the insolvency occurs and is known to the vendor before he ships the goods, he can not exercise the right of stoppage in transitu.* Schwabacker v. Kane, 13 Mo. App. 126; *Buckeley v. Furniss*, 15 Wend. 137; *O'Brien v. Norris*, 16 Md. 122; Tiedeman on Sales, sec. 135. *There must be a change of the circumstances after the shipment in order to justify the stoppage of the goods by the vendor.* Schwabacker v. Kane, *ante*; Benedict v. Schaettle, 12 Ohio St. 515; *Loeb v. Peters*, 63 Ala. 243; *Reynolds v. Railroad*, 43 N. H. 589. And the general rule is that when goods have been delivered to a common carrier for transportation to the purchaser, the delivery to the common carrier passes the title to the purchaser. *State v. Wingfield*, 115 Mo. 428; *Kerwin v. Doran*, 29 Mo. App. 397; Tiedeman on Sales, sec. 85.

The plaintiff, in support of the action of the trial court, insists that the defendant's refused instructions were mere abstractions, there being no evidence on which to base them, and for that reason were properly

refused. The defendant's refused instructions may not be so full and complete in enunciation as they should have been, still it seems to me that they were sufficiently comprehensive in their scope to submit to the jury the defense that the cultivators, after their delivery by plaintiff into the possession of the defendant, were not subject to be stopped by the plaintiff while in transit, and that, therefore, the delivery to the consignee constituted the breach of no duty which defendant owed the plaintiff. This brings me to the consideration of the question whether there is any evidence adduced to support the hypothesis of the defendant's refused instructions, for if there was they should have been given.

The undisputed evidence shows that the general manager of the plaintiff, who had charge of the sale and shipment of its cultivators, well knew before and at the time the transaction took place between him and Evans, the consignee, that the latter was wholly insol-vent. The defendant, some time previous to the trial of the case, took the deposition of the plaintiff's general manager, which was read in evidence by defendant. It was as follows:

"*Q.* Do you know the nature of this suit? *A.* Yes, sir.

"*Q.* Did you have any connection with the sale of the cultivators mentioned in the petition? *A.* Yes, sir.

"*Q.* To whom were they sold? *A.* To one J. R. Evans, of Waco, Texas.

"*Q.* That is the party whose name was marked on the goods? *A.* Yes, sir.

"*Q.* You say you had some personal connection with the sale to him? *A.* Yes, sir.

"*Q.* Where did that transaction take place? *A.* Well, at Paris.

"*Q.* He came up there to Paris? *A.* Yes, sir; he had been. I worked from that point, and right here you had better let me give you a detailed account of the transation.

"*Q.* Yes, sir, go ahead. *A.* J. R. Evans was the patentee and under an arrangement made with me as agent for the company, he had gone out west to sell goods for the company. I had charge of the sale and shipment of goods to him. Previous to this time I had shipped him a bill of goods at Hillsboro, Texas, and the understanding and agreement with Evans was that he should remit promptly after selling and disposing of the goods shipped to him. He had credit until he could sell the goods, or goods enough to make the payment under our contract with him. And as I stated, just prior to making this shipment to Waco, a shipment had been made to him at Hillsboro. His settlement with the company was not prompt and not satisfactory, so after shipping these goods to Waco, Texas, I had a letter from Evans that disclosed to us that we didn't want to extend him any credit any further. I then went to the agent, perhaps the next day, I went to the agent at Paris, and told him that I didn't want the goods delivered, this last consignment to Waco, Texas.

"*Q.* What agent? *A.* Mr. O. P. Vaughan, the station agent of the defendant, and told him that I didn't want the consignment delivered and wanted them held subject to order, or held until the freight bill that I had received, the bill of lading which I had received from the Missouri, Kansas & Texas Railway, was presented by the consignee, J. R. Evans. It was my intention to wait and see whether he made these remittances satisfactory or not, then I would send him the freight bill and he could receive the goods then and there. My idea was to stop him then and there if he didn't remit promptly."

It is quite true that afterwards, at the trial, the plaintiff's general manager, as a witness in its behalf, gave testimony somewhat at variance with that contained in his deposition hereinbefore quoted. He there testified that the consignor was a traveling agent of plaintiff, engaged in selling its cultivators on commission under an arrangement with him, and that the cultivators, to recover the value of which this suit was brought, were consigned to him under that arrangement. The bill of lading shows a consignment of the cultivators generally. The consignment was not to shipper's order. There was no reservation or qualifying terms in the bill.

It is settled by a long line of adjudications, cited in Porter's Law of Bills of Lading, section 471, note 1, that the effect of such a bill of lading is to vest the legal title to the goods shipped in the consignee. Such a bill is *prima facie* evidence that the property therein specified belongs to the consignee. The terms and provisions of the bill do not corroborate the testimony given by plaintiff's general manager for it, but do corroborate that given in his deposition for defendant. The bill of lading showing that the plaintiff had parted with the legal title—with the *jus disponendi*—is as consistent with the testimony of the plaintiff's general manager for defendant as it is inconsistent with that given by him for plaintiff. So that there is no doubt that the record discloses substantial evidence which tends very strongly to support the theory of the defense, viz.: that the plaintiff was not entitled to exercise the right of stoppage *in transitu* in respect to the cultivators in question.

This defense was submitted by no instruction for either plaintiff or defendant. The plaintiff's first and second instructions were upon the whole case. Yet they were so framed as to exclude from the considera-

tion of the jury the theory of defense which the evidence tended to establish. The rule of practice has long been settled in this state, that if a party asks an instruction on the whole case, he must so frame it as not to exclude from the consideration of the jury the points raised by the evidence of his adversary, as, for example, if a suit is on a bond for the payment of money, and the defendant gives evidence tending to show that he has paid it, it would not be proper for the court, at the instance of the plaintiff, to instruct the jury that if they believed that the defendant executed the bond, to find for the plaintiff. Such an instruction would be erroneous, as it would exclude from the jury all consideration of the question of payment. It is no answer to this to say that defendant might have asked instructions. He was not bound to do so and it was at the peril of the plaintiff to ask instructions disposing of the whole case, which excluded from the jury the consideration of the evidence of the defendant tending to show that he (plaintiff) had no right to recover. *Griffith v. Conway*, 45 Mo. App. 574; *Clark v. Hammerle*, 27 Mo. 55; *Sullivan v. Railroad*, 88 Mo. 169; *Fitzgerald v. Hayward*, 50 Mo. 516.

The objection that the defendant abandoned at the trial the defense that the cultivators were not subject to the right of stoppage in transit is sufficiently answered by the defendant's request for the instructions which were refused. It results from these observations that the action of the court in giving plaintiff's instructions excluding from the jury the defense raised by the defendant's evidence, was erroneous, and according to the rulings in the cases just cited, it would clearly seem that this would be so, whether the defendant had requested instructions presenting its defense or not.

If the plaintiff's theory of the case is the correct one, viz., that there was no sale of the cultivators to the

consignee, by the plaintiff, then notice to defendant, before the delivery to the consignee, is essential to a recovery and must be proved; for the reason that by the terms of the bill of lading, under which the said cultivators were delivered, into the possession of the defendant, the legal title thereof was *prima facie* in the consignee, who was entitled to the surrender to him of the same, whether he produced the bill of lading or not. *Dwyer v. Railroad*, 69 Texas, 707; *Railway v. McCown*, 25 S. W. Rep. 436.

If the plaintiff made a sale of the cultivators to the consignee, and he was, at the time, insolvent, and known to the plaintiff to be so, then the plaintiff was not entitled to stop the goods in transit, whether the defendant had notice of his claim before the delivery or not. In the latter case, notice is unimportant.

On account of the errors of the court in the giving and refusal of instructions, already adverted to, I am of the opinion the judgment should be reversed and the cause remanded; which, with the concurrence of the other judges, is accordingly ordered.