Hartman v. Muehlebach.

---

HENRY HARTMAN, Respondent, v. GEORGE MUEHLEBACH, Appellant.

Kansas City Court of Appeals, January 20, 1896.

1. **Trial Practice**: INSTRUCTION: ASSUMPTION OF DISPUTED FACT. An assumption may, with entire propriety, assume a fact which is established by uncontradicted evidence, but it is always error to so assume a fact where the evidence is conflicting.

2. **Master and Servant**: SCOPE OF AGENCY: MASTER'S LIABILITY. The master is duly responsible for the acts of his servant only so long as the servant in doing the negligent act is in the course of his employment as servant.

Hartman v. Muehlebach.

3. ——: ——: ——. In order to render the master liable for a bookkeeper's invitation to a customer to visit the barrel pitching department of a brewery, where he was injured, the jury must find that the invitation was given, not only while the bookkeeper was engaged in his employment, but that it pertained to the particular duties of his employment; and an instruction should not assume that it did so pertain to his duties.

4. **Negligence:** ACCIDENT: GENERAL MANNER: SCIENTER. An instruction in effect telling the jury that though defendant had no grounds from his knowledge of, and experience in, pitching barrels to anticipate danger, yet assuming that plaintiff's injury was not an accident, unless the pitching was done in the manner in which brewers generally followed, is erroneous, where the petition failed to allege that the defendant's manner of pitching was negligent and different from the general manner.

5 ——: INVITATION TO VISIT DANGEROUS PLACE: WARNING: CUSTOMER'S PROTECTION. Where a brewer invites a customer to visit a dangerous part of his premises, he must give such visitor sufficient warning of the danger to enable him by the use of ordinary care to avoid such, or he will be liable for any resulting injury, and this, too, whether the customer's visit would, or would not, benefit the brewer, as the customer is entitled to reasonable protection while on the premises and after his business is completed.

6. ——: ORDINARY CARE: DEFINITION. By ordinary care is meant such care as would be ordinarily used by prudent persons performing like services under similar circumstances, and it is suggested that instructions should conform with some care to the language of this definition.

7. **Witnesses:** EXPERT: QUALIFICATION. The qualification of an expert witness is a preliminary one for the trial court, whose decision is conclusive, unless it appears upon the evidence to have been erroneous or founded upon an error of law, and the qualification in this case is found sufficient to permit the witness to testify.

8. **Evidence:** EXPERT: HYPOTHETICAL QUESTIONS. Where there is a call for scientific or professional knowledge, or any particular knowledge or experience, or if the question be one upon which men of common information are not capable of forming a judgment, expert evidence is admissible; but hypothetical questions should assume only such facts as the evidence tends to establish and are relevant to the theories of the parties.

*Appeal from the Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

REVERSED AND REMANDED.

*M. Campbell* for appellant.

(1) The admission of the deposition of F. W. Ihne, who witnessed nothing, never was in the business of pitching barrels, was unable to designate, intelligently, a single gas generated by the ignition of pitch, and condemned himself as an ignoramus and charletan, by his own testimony, before every ordinary intelligence, was error.   *First.* If igniting pitch produces a dangerously explosive gas, the description and proportions of that gas are facts.   To such facts he does not testify. *Gaslight Co. v. O'Brien*, 118 Ill. 174; *Clark v. Bruce*, 12 Hun. (N. Y.) 271; *Emerson v. Gaslight Co.*, 6 Allen, 146; *Muff v. Railroad*, 22 Mo. App. 584; *Walton v. Railroad*, 40 Mo. App. 544; *Gates v. Railroad*, 44 Mo. App. 488.   *Second.* Although not "instructed by experience," or scientific discovery of the gas produced, he is allowed to declare it "dangerous," in ignorance of its name even.   *Koons v. Railroad*, 65 Mo. 592; *King v. Railroad*, 98 Mo. 235; *Hyde v. Woolfork*, 1 Iowa, 159; 7 Am. and Eng. Encyclopedia of Law, 491, *et seq*. (2) The giving of the court's instructions 1, 2 and 3, was erroneous.   They assume "the liability of barrels to explode," and ask the jury to determine whether that makes "a dangerous process."   *Stoher v. Railroad*, 91 Mo. 509; *James v. Railroad*, 107 Mo. 480; *Fullerton v. Fordyce*, 121 Mo. 13.   They assume that the invitation of Rhein, the bookkeeper, "I want to show you something," if given, was defendant's invitation.   *Redding v. Railroad*, 3 S. C. 1; *Peck v. Richey*, 66 Mo. 114; *Harty v. Railroad*, 95 Mo. 368; *Robertson v. Drane*, 100 Mo. 273.   They assume that a duty of warning plaintiff arose on such an invitation to Rhein's guest. *Welsch v. McAllister*, 15 Mo. App. 492; *Eisenberg v. Railroad*, 33 Mo. App. 85; *Railroad v. Griffin*, 100 Ind.

221; *Larmore v. Iron Co.*, 101 N. Y. 391; *Stockyards Co. v. Rourke*, 10 Ill. App. 474; *Reardon v. Thompson*, 149 Mass. 267. (3) The giving of the court's own instruction 4, and refusing defendant's instruction 9, on the subject of accident. The conditions in the former are confusing, misleading, and unnecessary; the latter is clear and definite. *Manufacturing Co. v. Mc-Cormack*, 118 Pa. St. 519; *Losee v. Buchanan*, 51 N. Y. 476; *Spencer v. Campbell*, 9 Watts & S. 32; *Marshall v. Wellwood*, 38 N. J. L. 339; *United States v. Taylor*, 5 McLean, 22; *Garland v. Towne*, 55 N. H. 57; *Miller v. Martin*, 16 Mo. 508; *Harvey v. Dunlap* (Lalor's Sup.) Hill & D. 193; *Brown v. Collins*, 53 N. H. 442; *The Nitro-Glycerine Case*, 15 Wall. (U. S.) 524; *Sheldon v. Sherman*, 42 N. Y. 484; *Richards v. Rough*, 53 Mich. 212; *Sjogren v. Hall*, 53 Mich. 274; *Steffen v. Railroad*, 46 Wis. 259; *Wanamaker v. Burke*, 111 Pa. St. 423; *Gould v. Woolen Co.*, 17 N. E. Rep. 531. (4) Refusing the fifth and eleventh instructions asked by defendant. Each proposition therein is for the jury. *First.* Since it is disputed that Rhein was authorized to invite Hartman into that yard. Deering on Negligence, sec. 216; Whittaker's Smith on Negligence, 154, note Y, and cases; *McKenzie v. McLeod*, 10 Bing. 385; 14 Am. and Eng. Encyclopedia of Law, 809; *Packer Co. v. McCue*, 17 Wall. (U. S.) 508; Shear. and Red. on Negligence, secs. 12, 62 and 63; *Brophy v. Bartlett*, 108 N. Y. 632. *Second.* Since the necessity of a warning is disputed—no want of care shown. *Yarnell v. Railroad*, 75 Mo. 583; *Koonz v. Railroad*, 65 Iowa, 224; *Tissin v. Railroad*, 112 Pa. St. 91; *Rockwood v. Nelson*, 11 Cush. 221; *Hatfield v. Roper*, 21 Wend. 615. *Third.* Since *prima facie*, by the terms of Rhein's invitation, as stated by plaintiff, it was made and accepted as Rhein's personal offer to show a curiosity, and without reference to business with Muehlebach. *Eisenberg v. Railroad*,

33 Mo. App. 90; *Carleton v. Iron Co.*, 99 Mass. 217; 14 Am. and Eng. Encyclopedia of Law, 809; Cooley on Torts, 553; Bishop on Noncontract Law, sec. 612; *Snyder v. Railroad*, 60 Mo. 413. (5) Refusing the seventh instruction asked by defendant. Ordinary care should have been defined, and defendant held harmless by its use. *Cohn v. City of Kansas*, 108 Mo. 387; *Stanley v. Railroad*, 114 Mo. 606.

*Wash Adams* also filed brief for appellant.

*Beebe & Watson* for respondent.

(1) The evidence of Ihne, Vogtle, Gilbert, Hoerl, Obermann, Kianna, Kraft, and Muehlebach himself, as set forth in bill of exceptions, tends to show that pitching barrels in the manner described in evidence was a dangerous process. The physical facts themselves showed the process was dangerous, and the character of the explosion in this instance furnished evidence that the process was dangerous. "The question, what is a dangerous thing, must be one for the jury." Whittaker's Smith's Negligence, page 68, and cases cited. (2) The criticism on plaintiff's first instruction is too refined to be appreciated by any one but a metaphysician. The evidence was abundant that the ignition of pitch often caused the formation of an explosive gas, rendering the process more or less dangerous according to conditions. The constitutive facts to be found by the jury were: *First.* Was this a dangerous process? *Second.* Did the defendant know it was dangerous, or ought he to have known it? These questions were properly submitted to the jury in this instruction. (3) The fifth instruction asked by defendant was properly refused. (4) There was no error in refusing defendant's instruction number 7. (5) The objections made to the testimony of Dr. Ihne are without merit.

SMITH, P. J.—This is an action to recover damages for personal injuries. The petition contained two counts, in the first of which the actionable facts on which plaintiff relied for a recovery were stated to be, that the defendant was the owner and occupier of a certain ·brewery building in Kansas City and that the plaintiff, while lawfully in said building, was invited by defendant to go back in said building and witness certain work then and there being done by defendant's servants, known as "pitching barrels;" that a part of said work consisted in igniting the pitch inside of said barrels; .that when said pitch was ignited it formed a dangerously explosive gas, which rendered the work dangerous on account of the liability of the barrels to explode, which facts defendant knew, or by the exercise of reasonable care might have known, and of which fact plaintiff was ignorant; .by means of which premises it became and was the duty of the defendant to warn the plaintiff of such danger. But the defendant, neglecting his duty, negligently and wrongfully invited the plaintiff to go back and witness said dangerous work, and wrongfully and negligently failed to warn plaintiff of said danger; and while the plaintiff was near said barrels, a servant of the defendant ignited pitch in one of the barrels, and the said barrel exploded, knocking plaintiff down and breaking his ankle and otherwise injuring him and permanently disabling him for life, to the plaintiff's damage, etc.

The *gravamen* of the second count was stated to be, that defendant wrongfully and negligently carried on said work in close proximity to one. of the public exits of said brewery, rendering the passageway dangerous for persons in the act of leaving the building to pass out, and plaintiff, intending to pass out of said exit, while in said passageway, was injured by the

explosion of a barrel wherein pitch was ignited by a servant of defendant, to plaintiff's damage, etc.

The answer was a general denial, appended to which was the plea of contributory negligence.

Under the pleadings and evidence adduced, the decisive issues which the jury were required to determine may be shortly stated in this wise: *First.* Whether the pitching of casks in the manner adopted and used by defendant, at the time of plaintiff's injury, was a dangerous process. *Second.* If such pitching process was dangerous, whether the defendant knew the fact, or, by the exercise of ordinary care, might have known it. *Third.* Whether John Rhein, the defendant's bookkeeper invited the plaintiff to go to that part of the brewery premises where the pitching process was being carried on by defendant's servants, to witness such process, without giving plaintiff any warning of the danger there. *Fourth.* Whether the act of defendant's bookkeeper, Rhein, in inviting the plaintiff upon that part of defendant's premises where the pitching process was being carried on, to witness the same, was within the scope of Rhein's authority. *Fifth.* Whether the defendant negligently carried on said pitching process, in such close proximity to a public passway from said brewery premises, as to render such passway dangerous; and whether plaintiff, while in the act of passing along the same, was injured.

As the principal error assigned by the defendant for the reversal of the judgment against him arises out of the action of the trial court in the giving and refusing of instructions, we shall turn our attention to the consideration of them. An examination of the evidence has not convinced us that the defendant's three instructions, in the nature of demurrers to the evidence, were improperly refused.

572    64 MISSOURI APPEAL REPORTS,

Hartman v. Muehlebach.

The court, on its own motion and over the objection of the defendant, by its instruction numbered 1, told the jury, that if they believed from the evidence that the pitching of barrels, in the manner adopted and used by defendant at the time of plaintiff's injury, was a dangerous process, on account of the liability of the barrels to explode, and defendant knew, or by the exercise of ordinary care might have known, that such process was dangerous, and plaintiff, without any knowledge that such process was dangerous, was invited by Rhein to go back where the pitching was being done, to witness the process, and was not warned of the danger, and was injured by the explosion of the barrel, then your verdict should be for plaintiff.

The propriety of the action of the court in giving this instruction is thus drawn in question. As has already been stated, one of the vital issues of fact in the case was whether the act of defendant's bookkeeper, John Rhein, in inviting plaintiff, if he did invite him, to visit that part of the defendant's premises where the pitching process was being carried on, to witness the same, was within the scope of Rhein's authority. This was a controverted issue. While the plaintiff adduced some evidence tending to sustain the affirmative of the issue, there was also substantial evidence adduced by the defendant in support of the negative of it. The defendant, with three other witnesses, testified, in effect, that the duties of Rhein were in the office and did not extend outside of it; that he had nothing whatever to do with the pitching of barrels; nor with the giving of orders to the foreman; nor had he any right to show people around the brewery. This instruction either assumed that the act of Rhein, in inviting plaintiff to go back where the pitching process was going on, to witness the same, was within the scope of his authorty or it assumed that if Rhein did

so invite plaintiff, the defendant was liable for the consequences of that act, whether the act was within the scope of Rhein's authority or not. Whether it be construed to mean the one thing or the other, it is equally erroneous. A trial court may, with entire propriety, by its instructions to the jury, assume the affirmative of an issue of fact, which is established by the uncontradicted evidence, but it is always error to do so where the evidence is conflicting. *Fullerton v. Fordyce*, 121 Mo. 1; *Hall v. Railroad*, 74 Mo. 302; *Barr v. Armstrong*, 56 Mo. 589; *Caldwell v. Stephens*, 57 Mo. 595; *Robertson v. Drain*, 100 Mo. 273. Whether the invitation of Rhein to plaintiff was that of defendant and for the consequences of which the latter was responsible, was, it seems to us, a pivotal question. The maxim of *qui facit per alium, facit per se* embodies the rule, the scope of which is not limited by express authorization, but extends to cases where the authority to act is implied only and operates by establishing an irrebuttable presumption in the circumstances in which it becomes applicable. The maxim of *respondeat superior* is the legal expression of the consequences arising from the application of the rule just stated, when, by reason of the principal's direct authorization of the acts in question, or by a conclusion of law which imputes them to the principal, whether he authorized them or not, the principal is precluded from showing that he presumably is not accountable for certain acts. The principle underlying this very extensive liability is an irrebuttable presumption that the master authorized every act done in the advancement of his business, pending the authority and covered by its objects. Beven, Prin. Law. Neg., sec. 272.

In giving the judgment of the Exchequer Chamber in *Berwick v. Bank*, L. R. 2 Ex. 259, it was said by WILLIS, J., that the general rule is that the master is

answerable for every such wrong of the servant, or agent, as is committed in the course of the service and for the master's benefit, though no express command or privity of the master be proved. In *Story v. Ashton*, L. R. 4 Q. B. 476, Chief Justice COCKBURN said: "The true rule is that the master is duly responsible, so long as the servant can be said to be *doing the act, in the doing of which he is guilty of negligence, in the course of his employment as servant."*

In Wood on Master and Servant, section 307, it is stated: "By putting the servant in his place, he becomes responsible for all his acts, within the line of his employment, even though they are willful and directly antagonistical to his orders. The simplest test is whether they were acts *within the scope of* his employment, *not whether they were done while prosecuting the master's business;* but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By authorized is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express or positive orders." And the last named author, in his work on railway law, section 316, states that the doctrine of *respondeat superior* does not apply simply from the circumstances that at the time when an injury is inflicted, the person inflicting it was in the employment of another; but that, in order to make the master liable, the act inflicting the injury must have been done in pursuance of an express or implied authority to do it. That it must be an act which is fairly incident to the employment—in other words, an act which the master has set in motion. In Shearman & Redfield on Negligence, section 147, it is said, that in determining whether a particular act is done in the course of

the employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. But the fact that he is so engaged is not conclusive of the master's liability. The act causing the injury must have been within the scope of the servant's express or implied authority.

As illustrative of the principles upon which the foregoing rules are founded, we might, if space permitted, cite numerous cases from both the English and American reports. We shall, however, only briefly refer to a few of the cases, mainly in this state, which we think are in point. *Snyder v. Railroad*, 60 Mo. 419, was where the defendant's servants were not engaged in carrying passengers, nor had they authority to permit persons to ride on the cars (freight cars), with or without compensation, nor was the invitation or permission alleged in furtherance of the master's interests, or indirectly connected with the service they had engaged to render it. The mere fact that a tortious act is committed by a servant, *while* he is actually employed in the performance of the service he has been employed to render, can not make the master liable. Something more is required. *It must not only be done while so employed, but it must pertain to the particular duties of that employment.* And to the same effect are *Cousins v. Railroad*, 66 Mo. 572; *Sherman v. Railroad*, 72 Mo. 63; *Springer v. Railroad*, 96 Mo. 299; *Garitzen v. Dunckel*, 50 Mo. 104; *Douglass v. Stephens*, 18 Mo. 363; *Jones v. Railroad*, 43 Mo. App. 398; *Farber v. Railroad*, 32 Mo. App. 383.

According to the rule thus established by the foregoing authorities, the mere fact that the invitation of Rhein to plaintiff was given while he was actually employed in the performance of the service he had been employed to render, did not make defendant liable for the consequences resulting from such invitation.

The invitation must not only have been given while Rhein was in defendant's employ, but it had to pertain to the particular duties of that employment. The instruction under review might well have assumed that Rhein was in the employ of the defendant, since that was an undisputed fact, but to assume that the giving of the invitation to plaintiff pertained to the particular duties of his employment, was an invasion of the province of the jury. Besides this, the assumption clearly excluded from the jury the consideration of the evidence of the defendant, tending to show that the giving by Rhein of the invitation did not pertain to the particular duties of his employment; that it was outside of the scope of that employment and that it was not defendant's invitation, and, therefore, he was not liable for the results of the same, however disastrous to plaintiff. *Clark v. Hamerle*, 27 Mo. 55; *Cultivator Co. v. Railroad*, 64 Mo. App. 305.

The defendant further objects that the trial court erred in giving its own instruction, numbered 4, and in refusing that asked by him, numbered 9, the former of which declared to the jury that if they believed from the evidence that the injury to plaintiff was the result of an accident, that is, an occurrence which neither defendant, nor his foreman, nor bookkeeper, had any grounds to fear or anticipate from their knowledge of, and experience in, pitching barrels, and that the experience of the defendant and his foreman was an experience of many years in pitching barrels, *and that the work was, when plaintiff was injured, done in the way and manner in which brewers generally pitched their barrels*, plaintiff can not recover. It will be seen from the italicized words of this instruction, that, though the occurrence which occasioned the plaintiff's injury was one which neither defendant, nor his foreman, nor bookkeeper had any grounds to fear or anticipate from

their knowledge of, and experience in, pitching barrels, yet the occurrence was not an accident, unless the pitching, at the time of the injury, was done in the way and manner in which brewers generally pitched their barrels. It is quite obvious that, if defendant, from his knowledge and experience in pitching barrels in the way and manner that it was done by him, had no grounds to fear or anticipate the occurrence which occasioned the plaintiff's injury, then such occurrence was an accident, whether or not the defendant's way of pitching, at the time of the injury, was the same as that practiced by brewers generally. Whether the injury was the result of an accident was, by the form of this instruction, made to depend upon the finding by the jury of an immaterial fact; namely, that the work of pitching was done by the defendant in the same manner as done by brewers generally. This was manifestly erroneous. The instruction was calculated to mislead the jury. It imposed upon the defendant the burden of showing a fact, in order to prove the injury the result of an accident, that he should not have been required to show. The jury might have believed that the defendant's manner of pitching was different from that of brewer's generally, and for that reason concluded that the injury was not the result of an accident. The cause of action stated in the petition was not that the defendant's manner of pitching was negligent, unskillful, or different from that of brewers generally. A recovery was not authorized on any such ground. Yet, from the language of this instruction, the jury might well have concluded that they were authorized to find for the plaintiff on such ground. We, therefore, think that the court should not have given its said fourth instruction, but should have given the defendant's ninth, which latter was a clear and concise definition of an accident in a case like the present.

The defendant's objection that his fourth and tenth instructions, as modified and given by the court, were erroneous in that they assume that Rhein invited plaintiff to witness the pitching, is not well taken. Whether or not plaintiff was present to witness the pitching process of his own volition, or on the invitation of Rhein, was by these instructions left for the jury to determine from the evidence.

The defendant objects further that the court erred in refusing his fifth instruction, which declared that the plaintiff can recover nothing on the first count of his petition, without affirmative proof that the act of inviting the plaintiff to witness the pitching of beer barrels, and not at the time warning him that said barrels were liable to explode, was in truth and fact the act of defendant, or of some one authorized by defendant to give such invitation; nor can he even then recover, unless a person of ordinary prudence in the same situation and under the same circumstances, would have accompanied such invitation by a warning as to such danger, nor can he recover even then without affirmative proof that he went into said yard to see said work, not out of mere curiosity, but on some business, or for some purpose that would or might benefit the defendant. It, in effect, declares the law to be that, though the defendant invited the plaintiff, his customer, to witness the pitching process, without any warning of the danger of an explosion, he is not liable, even though he knew of the danger, unless a person of ordinary prudence, under the same circumstances, would have accompanied such invitation with a warning of the danger. Under such circumstances, the law imposed upon the defendant the duty to warn the plaintiff, who was his customer, of the danger to be apprehended. The question was one for the court and not for the jury. The rule is that if one's premises are,

in any respect, dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. Redfield on Neg., sec. 704; *Welch v. McAlister*, 15 Mo. App. 492.

This instruction further asserts the law to be, that if a merchant, or brewer, invites a customer to a portion of his premises that is dangerous, without any warning to the customer of the danger, and the customer is thereby injured, he can not recover unless he went to such place, on business that *would or might benefit defendant*. Or otherwise put, the defendant's liabiliy is made to depend on the question of whether he would or might be benefited by the customer accepting his invitation. This is not the law, for the customer is entitled to reasonable protection while on the premises and after his business is completed.

The defendant further objects that the court erred in refusing his seventh instruction, defining *ordinary care* to be "such care and prudence as a man in the brewing business and of ordinary care and prudence is accustomed to exercise, under circumstances similar to those detailed in the evidence," etc. "By *ordinary care* is meant such care as would be ordinarily used by prudent persons, performing like service, under similar circumstances," say the supreme court in *Frick v. Railroad*, 75 Mo. 595. And in *Stanley v. Railroad*, 114 Mo. 606, it is said that this rule has been steadily maintained in that court since the decision of the *Frick* case. It is one that enables each jury, in each recurring case, to say, after a careful survey of all the facts, whether the party used that care that an ordinarily prudent person would have used under similar circumstances. The words of the instruction just quoted are not exactly those employed in the rule, but they are of equivalent meaning. As there was no other instruction defining these terms, we think this one should have been given.

As the judgment will be reversed and the cause remanded, we may venture the suggestion that if, at another trial, the defendant shall desire an instruction defining "ordinary care," in framing the same, he follow with greater care the language employed in the precedents just referred to.

There was no error in the action of the court in refusing the defendant's eleventh instruction, since his fourth and tenth, as modified and given by the court, fully covered the same ground. The defendant further complains of the action of the court in refusing other instructions requested by him, but an examination of such instructions does not satisfy us that his complaint is just.

The defendant further complains of the action of the court below in permitting the plaintiff to read in evidence to the jury the deposition of one Ihne on the ground that the witness did not show himself qualified to testify his opinion as an expert. Whether a witness who is offered as an expert, possesses the proper qualifications, is a preliminary question for the trial court, whose decision is conclusive, unless it appears upon the evidence to have been erroneous or founded upon an error of law. It appears from the deposition of Ihne, that he was educated at Giessn, Heidelberg, and Bonn, in Germany, where he studied mining, chemistry, and technology, and that he had had thirty-five years' experience in laboratory work and in a good many kinds of practical chemistry and technology. This testimony, we think, was ample to justify the action of the court in permitting the plaintiff to read to the jury so much of the deposition of the witness as was in the nature of expert testimony. The rule is now well settled that an expert may give an opinion, based on a state of facts which he himself has witnessed, or which is detailed to him by other witnesses, or which is put to him in the

form of a hypothetical case. And he may state the grounds for the opinion expressed. This affords the jury an opportunity to judge of the value and weight of his opinion. The rule is further declared by the authorities to be, that the subject must be one of science or skill, or one of which observation and experience have given him an opportunity and means of knowledge, which exists in reason rather than descriptive facts, and hence can not be intelligently communicated to others not familiar with the subject, so as to possess themselves of a full understanding of it. If there is a fact in a case, which calls for scientific or professional knowledge, or any particular knowledge or experience, or if it be one upon which men of common information are not capable of forming a judgment, it is a case for expert evidence. *Benjamin v. Railroad*, 50 Mo. App. 602. *Goss v. Railroad*, 50 Mo. App. 614; *Neudeck v. United Workmen*, 61 Mo. App. 97.

And a further requirement of the rule is, that in putting hypothetical questions, facts may be assumed, where there is evidence tending to establish them and which are relevant to the the theories which the parties are attempting to uphold. It was, therefore, proper for the plaintiff to state to the witness one or more hypothetical cases, embracing in their assumption such relevant facts as the testimony tended to prove and to ask his opinion upon the case so stated. As, for example, the plaintiff might have asked the witness whether the process of pitching beer barrels, where part of the work consists in igniting the pitch inside of the barrels, is, in his opinion, a safe or dangerous process. This question might have been varied so as to elicit from the witness his opinion on every branch of the case upon which scientific opinion was proper. But his questions and the answers thereto should be restricted within the limits of the rule which we have already stated. The

process of pitching should be assumed in the questions to be the same as that which the evidence tends to show was used by the defendant. The witness should not be permitted to state the manner in which he had seen others pitch their barrels, and from such observation testify his opinion as to whether the process was generally dangerous or not. His opinion should be confined to and based upon the facts which the evidence tends to prove in the present case. It was clearly erroneous to ask the witness whether the pitching of barrels in the way he described the same was safe or dangerous or liable to explode the barrels. The question should have been whether pitching in the way which the evidence tended to show it was done by defendant, at the time of plaintiff's injury, was safe or dangerous or whether the barrels subjected to that process were liable to explode. It was a most prejudicial error to permit the witness to relate what he had seen take place during the pitching of barrels in other breweries, or that the process is generally known among brewers to be dangerous, or that the pitching process has been abandoned generally, on account of the danger of the same, or that any one who did not know the process to be dangerous would be an exception, or that a knowledge of the danger of the process could be learned from reading the papers, or through brewing academies, or by brewers talking among themselves, or that the workmen in breweries prefer to do any work to that of pitching, on account of the danger. This and other testimony of the like character of the witness related to matters which could not be the subject of scientific or expert opinion. It is inconceivable upon what theory it was admitted. It was irrelevant to any issue in the case and upon no ground was admissible. The questions in chief propounded to the witness not having been all presented by the abstract, we can not

be more specific than we have in pointing out such parts of the deposition as we think should have been excluded by the court from the jury.

Many other points are discussed in the briefs of counsel, which, owing to the view we have taken of the case, need not be noticed.

The judgment will be reversed and the cause remanded. All concur.