Eddy v. Baldwin.

JOSEPH A. EDDY, Plaintiff in error, v. HENRY BALDWIN *et al.*, Defendants in error.

*Evidence.*—The testimony admitted upon trial must be relevant to the issues submitted to the jury.

*Fraud—Solvency.*—The solvency required by law, which will sustain a voluntary deed, consists not only in the present ability of the debtor to pay his debts, but in such a condition of his means that payment can be enforced by process of law.

*Error to St. Louis Court of Common Pleas.*

The facts are stated sufficiently in the opinion. The following are the instructions given and refused upon the question of solvency:

The plaintiff asked the following instructions, which the court refused:

1. If the jury believe from the evidence that when the deed of Hall to Willi was made, Henry Baldwin was indebted, but that such indebtedness could not be collected by legal process, then they should find that he was then insolvent.

2. If the jury believe from the evidence that at the time the deed of Hall to Willi was made, Henry Baldwin was indebted beyond any means within his personal control to pay, or that, if he had means enough to pay his indebtedness, they were not in such condition that they could be directly taken and appropriated for the payment of such indebtedness under a writ of execution therefor against him, then they should find that he was then insolvent.

3. If the consideration of the deed made from Hall to Willi, dated May 30, 1844, was paid out of money in the possession of or under the control of the wife of Henry Baldwin, as testified to by the witnesses in this case; if said Henry Baldwin at the time knew of said conveyance, and how the consideration therefor was paid; if he, at the date of said deed, owed debts, including an indebtedness by him to Beach & Eddy; if said Baldwin then had not sufficient property or means to pay or satisfy his existing indebtedness, or if his means were

so managed or disposed of by him, or with his knowledge and consent, that they could not be directly taken and appropriated for the payment of such indebtedness of said Baldwin, under a writ of execution therefor, against him; if said Julia, his wife, at the time said deed from Hall to Willi was made, knew that her said husband was so indebted; if she also knew how and out of what money the consideration of said deed was paid, then the jury should find that said deed was made with intent to defraud or delay the creditors of said Henry, and that said Julia was privy thereto.

4. If the jury believe from the evidence that, at the date of the deed of Hall to Willi, Henry Baldwin had so far given to his wife his means, that at that time an execution against him for such indebtedness as may have been proved then existed, could not be made by taking what means then remained to him, they then should find him insolvent at the date of said deed.

5. If the jury believe from the evidence that, without the money shown to have been in the hands or under the control of Mrs. Baldwin, Mr. Baldwin could not pay his debts at the date of the deed of Hall to Willi, and that the said moneys were intended to be held and controlled by her, with his consent, for her own use as against him and his creditors, except so far as she should consent, then they should find that he was insolvent at the date of said deed.

The defendant asked and the court gave the following:

"If the jury shall believe from the evidence in the case that the deed from Hall to Willi was made with the intent to provide out of a part of the means of H. Baldwin a support for his wife Julia, to guard against the future improvidence of her husband; that this was the only intent and purpose in making the deed; that at the time of making said deed H. Baldwin had means and effects over and above the purchase price of a house and lot conveyed by the deed amply sufficient to pay off and discharge all legal debts or liabilities then existing against him, they will find, under the fourth issue, that the said deed was not made with the intent to de-

fraud or delay the creditors of said Henry Baldwin in obtaining their just demands against him."

Of its own motion, the court gave the following:

" If, at the date of the deed from Hall to Willi, Henry Baldwin had sufficient means either in money or property, or both, in his possession, or subject to his immediate and absolute control, to pay all his debts, he was not at that time insolvent, notwithstanding his means or part of them consisted of moneys in his possession or in the possession of his wife, and could not without his consent have been seized or taken by process of law."

*A. Todd* and *J. M. Krum*, for plaintiff in error.

I. The court admitted for the defence testimony not relevant to the issues, and calculated to mislead the jury.

II. The court erred in its instruction defining insolvency. If when the conveyance was made Baldwin was in debt, and the consideration paid was from his money, and payment of his debts could not be enforced by process of law, then he was insolvent, and the conveyance was fraudulent. (4 Hill, N. Y. 650, 13 Wend. 377.)

*Hill* and *Burwell*, for defendants in error.

DRYDEN, Judge, delivered the opinion of the court.

This is a suit brought by Eddy against Henry Baldwin, Julia A. Baldwin, his wife, and Samuel Willi, her trustee, for title and possession of a house and lot in the city of St. Louis, conveyed the 30th of May, 1844, by one Hall to Willi, in trust for the sole and separate use of Mrs. Baldwin. The petition charges that at the time of the purchase Henry Baldwin was insolvent, and largely indebted to the late firm of Beach & Eddy, of which plaintiff is survivor; that the purchase price of the premises, three thousand eight hundred and fifty dollars, was paid out of the money of Henry Baldwin, and that the conveyance was made to Willi to defraud the creditors of Henry Baldwin; that since the conveyance to Willi plaintiff had purchased the property, and taken a

sheriff's deed therefor, at an execution sale on a judgment rendered against Henry Baldwin for the recovery of a debt to Beach & Eddy, subsisting at the time of the conveyance to Willi. After coming in of the answers, the court directed the following issues to be submitted to a jury, viz:

" 1. Whether, when the deed from Hall to Willi was made, the defendant, Henry Baldwin, was insolvent?

" 2. Whether, when the deed from Hall to Willi was made, Henry Baldwin was indebted to Beach & Eddy, and whether he afterwards became further indebted to them, and whether the judgment against said Henry in favor of Eddy as surviving partner of Beach & Eddy was rendered for such indebtedness?

" 3. Whether the money for which Hall made the said deed to Willi was the money of the said Henry Baldwin?

" 4. Whether the said deed from Hall to Willi was made or contrived with the intent to defraud or delay the creditors of said Henry in obtaining their just demands against him, and if so, whether the said Henry and Julia A. Baldwin or either of them were party or privy to said intent, and which of them was party or privy thereto ? "

On the trial of these issues, evidence was given tending to prove that the property of Henry Baldwin, at the time of the purchase of the house and lot, consisted alone of about —— dollars, the fruits of Mrs. Baldwin's labors, chiefly in teaching school, and the proceeds of a prize of eight thousand dollars drawn in a lottery a short time before the purchase of the property in question, all claimed and controlled by Mrs. Baldwin, and admitted and treated by Baldwin as her separate property. The evidence also tended to show that at that time Henry Baldwin was indebted to Beach & Eddy in about seven hundred and fourteen dollars for sums of money which in the course of some two or three years before he had embezzled while in their service as book-keeper, and that his peculations continued until the sum he had abstracted amounted in 1848 to about the sum of five thousand eight hundred and eighty-eight dollars. It also appeared that

Eddy v. Baldwin.

about the month of July, 1842, Henry Baldwin applied for and afterwards obtained the benefit of the bankrupt law, but that his indebtedness to said Beach & Eddy was not put in the schedule of debts.

The court admitted the following evidence at the instance of the defendants against the objections of the plaintiff:—Mr. Willi being interrogated as to the habits of industry and economy of Mrs. Baldwin, said, "Julia A. Baldwin was always very attentive while serving as a teacher in the public schools; witness was then a member of the Board of Public Schools; witness always considered her economical in her expenditures; she occupied one of the class rooms in the public school house, about fifteen feet square, for which she paid no rent; she is smart, intelligent, and capable of transacting business; orders for her wages were drawn in her favor." Defendant then asked the witness this question: "Are you able to state whether it was necessary for her to use exertions to support herself?" To which the witness answered: "that from what he knew of her circumstances he supposed it was at that time necessary for Mrs. Baldwin to exert herself for her support; any woman having a husband like Mr. Baldwin must exert herself to get a support." Mr. Hall being interrogated as to the habits of Henry Baldwin, against the objection of plaintiff, said: "He (Baldwin) was in the habit of getting drunk, and witness tried to persuade him to do better; Baldwin was a very foolish man when drunk; I saw him drunk once when he had money, scattering it around; Mrs. Baldwin had no confidence in Henry Baldwin; I have heard her beg him to reform, often with tears; sometimes she would say, in heart-broken tones 'I must give him up;' but then she would add: 'but he is my poor husband; I cannot give him up. You are a dear good man, and your only fault is drink.'"

The court then refused the instructions asked by the plaintiff as to what constitutes insolvency, and gave one on the subject of its own motion, and plaintiff excepted.

The jury then found the first and fourth issues in the neg-

ative, and the second and third in the affirmative. Plaintiff moved for a new trial, but it was overruled and he excepted. The court on the final trial adopted the finding of the jury and dismissed the petition. Plaintiff asked the court to reverse its finding, which was refused and the plaintiff excepted, and has brought the case here by writ of error.

1. The testimony, the admission of which the plaintiff objected to, did not bear upon any issue submitted to the jury, and was therefore irrelevant; not only so, but from the peculiar features of the case it was well calculated to mislead the mind and improperly sway the feelings of the jury, and ought not to have been admitted.

2. The second question relates to the instruction given and those refused, as to what constitutes *solvency*. The law as given by the court on this subject is, that solvency consists alone *of the present ability* of the debtor to pay, without regard to the efficiency or inefficiency of legal process to compel payment. Abstractly considered, this definition of solvency is very well; but when applied to cases of the sort under consideration, we think it does not come up to the measure of the law. The law is practical and looks to the attainment of practical results; and a solvency which it cannot employ in the payment of the debt of an unwilling debtor, is certainly not distinguishable by any valuable difference from insolvency. The term *solvency* in its application to cases like this, implies as well the present ability of the debtor to pay out of his estate all his debts, as also such attitude of his property as that it may be reached and subjected by process of law, without his consent, to the payment of such debts.

For these reasons, the judgment of the Common Pleas is reversed and the cause remanded; the other judges concurring.