ABE SCHWABACHER ET AL., Respondents, *v.* PATRICK KANE ET AL., Appellants.

### January 2, 1883.

1. INSOLVENCY.—A person who has converted all his visible property into cash and "absconded from his usual place of abode in this state" is insolvent.

2. CARRIERS — STOPPAGE IN TRANSITU. —It is not essential to a vendor's right of stoppage *in transitu* that the vendee's insolvency should have arisen since the sale and shipment.

3. VENDOR'S LIEN — WAIVER. — A vendor's lien is not waived by his delivery of the goods to a carrier, without notice of the vendee's insolvency.

4. ATTACHMENT — STOPPAGE IN TRANSITU. — A creditor who attaches goods in transit cannot hold them as against the vendor's right of stoppage *in transitu.*

5. REPLEVIN. — A vendor may replevy goods thus seized by a creditor of the vendee.

6. NOTICE. — Notice to the carrier by the vendor is not necessary where the goods have been taken from the carrier's custody by legal process.

7. STOPPAGE IN TRANSITU — LACHES. — The vendor's right of stoppage *in transitu* is not affected by his laches so long as the goods remain in transit.

APPEAL from the St. Louis Circuit Court, BOYLE, J. *Affirmed.*

RUDOLPH HIRZEL, for the appellants: The evidence fails to show the debtor's insolvency. — *Durgy* v. *O'Brien,* 5 Cent. L. J. 147; *Rogers* v. *Thomas,* 20 Conn. 54; 1 Pars. on Con. 595, 596. The laches of the vendor deprives him of the right of stoppage *in transitu.* — *Calahan* v. *Babcock,* 21 Ohio St. 281; *Martin* v. *Fritch,* 6 Wend. 103. Notice must be given. — Benj. on Sales, sects. 859, 860; Story on Sales, 267; 1 Pars. on Con. 597; Chitty on Con. 461; *Whitehead* v. *Anderson,* 9 Mee. & W. 518.

M. B. JONAS, for the respondents: If a vendor, after he delivers goods to a carrier, discovers his vendee is insolvent, he may retake the goods at any time before they reach the possession of the vendee. — Benj. on Sales, sect. 828; 1 Pars. on Con. 595. And the goods are not to be deemed in the possession of the vendee, so as to defeat this right, from the mere fact that they have been stored in the depot or warehouse of the carrier at the end of its route. — *White* v. *Mitchell,* 38 Mich. 390; *Buckley* v. *Furniss,* 15 Wend. 143; *Morris* v. *Shryock,* 50 Miss. 597; 1 Pars. on Con., sects. 601, 602. Nor can this right be defeated by attachment of creditors of the vendee or consignee. — Benj. on Sales, sect. 862, note c; *Inslee* v. *Lane,* 57 N. H. 454; *Durgy Cement Co.* v. *O'Brien,* 123 Mass. 12.

Insolvency is defined by the supreme court of this state to mean, such a condition on the part of the debtor, that the payment of his debts cannot be enforced against him by process of law. — *Eddy* v. *Baldwin*, 32 Mo. 369 ; *Potter* v. *McDowell*, 31 Mo. 62. Notice is not necessary. — *Morris* v. *Shryock*, 50 Miss. 590 ; *Inslee* v. *Lane*, 57 N. H. 454.

LEWIS, P. J., delivered the opinion of the court.

This is an action of replevin for two barrels of whiskey. The plaintiffs were wholesale liquor dealers in Louisville, Kentucky, and James Manley kept a saloon in the city of St. Louis. About July 1, 1881, Manley ordered of the plaintiffs two barrels of whiskey, and the goods here in controversy were thereupon shipped by the plaintiffs to Manley, so that they arrived at the railroad depot in St. Louis about the 10th of July. At about the same time, Manley sold out his entire stock, fixtures, and business for $450, and disappeared from the city. The property sold was valued at $800, and was under a mortgage for $300. Manley was indebted to various parties, to the amount of about $400, including a debt due to the defendant, the J. A. Monks & Sons Distillery Company, of $194.51. On July 22d, the distillery company proceeded against Manley by attachment, on the ground that he had absconded from his usual place of abode in this state, so that the ordinary process of law could not be served on him. The defendant Patrick Kane, as constable, levied this attachment on the whiskey in controversy, which was yet in the keeping of the carrier railroad, and had never been delivered to the consignee. The attachment suit was pending when, on August 25th, a member of the plaintiffs' firm came to St. Louis, and, upon being then first informed of the facts above recited as occurring since the shipment, instituted the present suit. The sale by the plaintiffs to Manley was on

a credit of ninety days. The circuit court, sitting as a jury, gave judgment for the plaintiffs.

It is insisted for the defendants that the plaintiffs had no right of stoppage *in transitu*, because it does not sufficiently appear that Manley was insolvent; and because, if he was so in fact, he was as much insolvent when the goods were shipped, as at any time afterwards; and it is essential to the right, that the vendee's insolvency shall have arisen after the sale and shipment. For the last proposition, there seems to be authority in *Rogers* v. *Thomas* (20 Conn. 54). A majority of the court so held; and agreed, further, that, if the insolvency existed at and before the shipment, it was immaterial whether the vendor was ignorant of such insolvency at the time, or not; the mere fact of its existence when the goods were shipped, would cut off the right of stoppage *in transitu*. But a dissenting opinion by Waite, J., clearly shows that the views of the majority are utterly inconsistent with the nature and foundation of the right in question, and are not sustained, even by the adjudications which are cited for their support. Either member of the general proposition seems to be at war with sound reasoning. All authorities agree that the right of stoppage *in transitu* is nothing but an extension of the vendor's lien on the goods for the payment of the purchase-money. The force of this lien is certainly not impaired by the insolvency of the vendee at the time of the sale, whether known to the vendor, or not. So long as the goods remain in the vendor's possession, his lien continues. But he may release it by a delivery into the actual possession of the vendee. If he delivers to the carrier, the vendee's agent, with full knowledge of the vendee's insolvency, he should not afterwards be permitted to set up that insolvency, to defeat the release of lien legitimately presumable from such delivery. But if he deliver to the carrier, in ignorance of such insolvency, it cannot be imputed to him that he has voluntarily surrendered his lien,

until the goods are actually received by the vendee. From this it would seem to follow that, whether the insolvency of the vendee exist 'at the time of the shipment, or arise afterwards, is immaterial to the vendor's right of stoppage *in transitu;* but that the really vital question is, whether the vendor's knowledge of the insolvency came to him before or after the shipment of the goods? That such is the true rule, appears to be recognized in a number of cases; though it may be doubted that the legal issue was squarely presented in any except *Rogers* v. *Thomas* (*supra*). In *Litt* v. *Cowley* (1 Holt's N. P. Cas. 238), the plaintiffs shipped goods at Manchester to their vendees in London. Two days afterwards, they were informed that the vendees were insolvent; whereupon they sent an order to the carrier to stop the goods, and not deliver them to the vendee. It was not pretended that any change in the circumstances of the vendees occurred between the time of the sale, or the shipment, and the order to stop the goods. The vendor's right of stoppage was sustained in an action of trover against the assignees in bankruptcy of the vendees. Gibbs, C. J., said: "It has never been doubted but that the goods vested in the vendee, as soon as they left the original owner's possession; but it has always been equally certain, that the owner might retake them in their passage by any means short of felony, if he had subsequent grounds for believing that the purchaser would not perform his part of the contract, by paying for them." This judgment was afterwards, says the reporter, "unanimously concurred in by the full bench." In *Patton* v. *Thompson* (5 Man. & Sel. 368), Holroyd, J., said, he thought it clear that the plaintiffs had a right, "upon hearing of the insolvency" of the consignees, to take measures for stopping the consignment *in transitu*. In *Inslee* v. *Lane* (57 N. H. 454), the court said: "The essential ground of the right of lien is possession; that of stoppage *in transitu* is non-delivery to the vendee. * * * It is conceded

that the vendees were insolvent, and that the fact first became known to the plaintiffs after the shipment of the goods.'' In the reporter's statement of the facts, it is said : '' No question was made at the trial but that said firm was insolvent, and that the plaintiffs first learned of their insolvency after the goods were shipped.'' The right of stoppage was sustained. In *Buckley* v. *Furniss* (15 Wend. 137), '' the plaintiff claimed to recover on the ground that he had sold four tons of Russia iron, of which the forty-one bars in question were a part, to Henry B. Titus, on credit, and that, subsequently discovering him to have been insolvent at the time of the sale, he had repossessed himself of the iron under the right of stoppage *in transitu*.'' The court sustained the plaintiff's right, remarking : '' Still, it may be, and probably is, true, that if the plaintiff sold the iron with a full knowledge of the situation of the vendee, he could not afterwards exercise the right of stoppage *in transitu;* but the argument is not borne out by the facts in the case.''

It is evident, in all these cases, that the right is considered as depending upon the insolvency at the time of the stoppage, without any reference whatever to the time of its commencement, and that the vendors are entitled to the exercise of the right, upon discovering that insolvency. So far as the equity of any such case is concerned, it is quite as strong in favor of the vendor, whether the purchaser was solvent or insolvent at the time of the purchase, provided that insolvency was concealed from him. There is, therefore, in our opinion, nothing upon which to reverse the present judgment, in the fact, even if it be true, that Manley was insolvent at the time of his purchase. It is not pretended that the plaintiffs had any knowledge of his insolvency, until long after the shipment. As to the fact of his insolvency, there is no difficulty whatever. A man may be fully able to pay his debts, if he will, and yet, in

the eye of the law, he is insolvent, if his property is so situated that it cannot be reached by process of law and subjected, without his consent, to the payment of his debts. *Eddy* v. *Baldwin*, 32 Mo. 369. The evidence shows that Manley had converted all his visible property into cash, and absconded. The defendants sued out an attachment against him, upon an affidavit that he had "absconded from his usual place of abode in this state," so that the ordinary process of law could not be served upon him. It would be strange, if they could now deny his insolvency, within the legal intendment of that condition.

It is settled in a number of cases, that an attaching creditor who intervenes between the shipment and an actual delivery to the purchaser, stands in no better position than the vendee himself, and, as against the right of stoppage *in transitu*, must equally yield to the claim of the vendor. *Buckley* v. *Furniss*, 15 Wend. 137 ; *Morris* v. *Shryock*, 50 Miss. 590; *O'Brien* v. *Norris*, 16 Md. 122 ; *Smith* v. *Goss*, 1 Campb. 282.

It is charged that the plaintiffs were guilty of laches, in not exercising their right of stoppage until more than a month had elapsed after the shipment. No authority attaches any limitation to the right, where it once exists, other than the actual receipt of the goods by the vendee.

Notice to the carrier must usually be given, in exercising the right of stoppage *in transitu*, so as to fix his responsibility, if he subsequently delivers to the vendee. But, when the goods have already been taken by legal process out of the carrier's custody, a notice to him would be not only useless, but altogether absurd. The defendant's objections on this ground have no force.

It is a sufficient answer to the defendant's objection that the plaintiffs have mistaken their remedy, that replevin is always appropriate, where " the plaintiff claims in his petition the possession of specific personal property." Rev.

Stats., sect. 3844. We know of no rule which requires a party to seek redress in damages only, when a more specific remedy is provided to fit his case. The judgment is affirmed. All the judges concur.