[S. F. No. 7916.  In Bank.—August 31, 1917.]

EDSON F. ADAMS, as Executor of the Last Will and Testament of Thomas Prather, Deceased, Respondent, v. SAMUEL D. PRATHER et al.; SAMUEL D. PRATHER, Appellant.

ESTATES OF DECEASED PERSONS—CONSTRUCTION OF WILLS—INTENTION OF TESTATOR.—A will is to be construed according to the intention of the testator, which is to be ascertained from the words of the will.

ID.—ORDINARY SENSE OF WORDS CONTROLS.—In the absence of a clear intention to use them otherwise, the words of a will are to be taken in their ordinary and grammatical sense.

ID.—WILL TO BE CONSTRUED AS WHOLE.—Unless irreconcilable, all parts of a will are to be construed in relation to each other and so as to form one consistent whole.

ID.—WORDS IMPORTING ABSOLUTE DISPOSAL CONSTRUED AS GIVING LIFE ESTATE ONLY WITH POWER TO EXPEND DURING LIFE.—Where a testatrix gave to her husband by the words of her will "all property of which I die possessed," and appointed him executor without bonds, and gave him power to sell without any order of court, but directed that upon her husband's death the "unexpended portion" of the estate bequeathed should "be given" to certain of her nieces, the estate given to the husband was limited to such part of the property as he might in his lifetime expend, consume, or make use of, and such part of the property as might remain unexpended at his death was to be given to the nieces.

ID.—GIFTS FOR LIFE WITH REMAINDER OVER AS TO UNEXPENDED POR-·TION—LIMITATION ON LIFE TENANT'S POWER OF DISPOSITION.—Under a will which was construed as giving a life estate only to a husband with unrestricted power in his lifetime to use, consume, and expend all or any part of the property, but giving to certain nieces an estate in remainder in the unexpended portion, the husband could not, as of right, give the property away in his lifetime, nor make it the subject of testamentary disposition at his death.

ID.—GIFT OF LIFE ESTATE—RIGHTS OF PURCHASERS FROM LIFE TENANT.—Under a will appointing the husband of the testatrix executor with absolute power of sale of all her property, with the right to use, consume, and expend it during his life, but with remainder over in the unexpended portion, at his death, to others, persons dealing in good faith with the husband, as to the property, would be entitled to protection as fully and to like extent as though he were absolute owner in fee.

FRAUDULENT CONVEYANCES AND TRANSFERS — GIFT DURING LAST ILL-NESS—EXECUTOR'S SUIT TO SET ASIDE FOR BENEFIT OF CREDITORS.—A gift made during a decedent's last illness is, as to the creditors of the deceased, to be treated as a legacy, and when there is a deficiency

of assets to meet the demands of creditors, the property which is the subject of the gift is liable for the debts and obligations of the decedent.

ID. — FACTS WARRANTING SUIT BY EXECUTOR TO SET ASIDE FRAUDULENT TRANSFER.—The existence of debts and a deficiency of assets with which to pay them are facts sufficient to warrant an action by an executor to set aside a transfer of property made by a testator in fraud of his creditors.

ID.—ACTION NOT PREMATURE.—An order of court for sale of property is not necessary before action by executor to set aside a transfer made by a testator in fraud of his creditors.

ID.—JUDGMENT IN EXECUTOR'S SUIT SETTING ASIDE FRAUDULENT TRANSFER—EFFECT OF SUCH JUDGMENT.—After a judgment in a suit by an executor for the benefit of creditors, setting aside a transfer of property made by the testator in his lifetime as fraudulent as against creditors, the executor can sell only such part of the property recovered as may be necessary to pay the debts, upon obtaining an order so to do from the probate court, and the surplus of any funds derived from such sale must be returned to the defendant.

WORDS AND PHRASES—FRAUDULENT TRANSFERS AND CONVEYANCES—"INSOLVENCY" DEFINED.—A man controlling property out of which he may voluntarily pay his debts, but which for any reason cannot be reached by process of law and thus be subjected to such payment, is nevertheless insolvent.

ID.—CONSTRUCTION OF WILL—"UNEXPENDED" DEFINED.—The word "unexpended" in a gift by will of the "unexpended" portion of the estate remaining after the death of the first taker means the portion not paid, laid out, spent, disbursed, or consumed, and which remains unappropriated in the first taker's possession and control.

COURTS—JURISDICTION TO CONSTRUE WILL—INCIDENTAL JURISDICTION OF COURT OF EQUITY.—Conceding that a court of equity will not entertain a suit the sole object of which is to obtain the construction of a will, jurisdiction so to do being vested in the probate court, a court of equity is nevertheless, when necessary to the determination of a question properly before it, vested with jurisdiction to construe a will as incidental to the equitable relief sought.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Chapman & Trefethen, and R. H. Countryman, for Appellant.

Corbet & Selby, Snook & Church, and J. P. O'Brien, for Respondent.

VICTOR E. SHAW, J., *pro tem.*—This action arose out of the following facts: Thomas Prather and Julia P. A. Prather were husband and wife. On April 6, 1906, Julia died leaving an estate of some six hundred thousand dollars which she made the subject of testamentary disposition by a holographic will in form as follows:

> "Oakland, California,
> "Sept. 26, 1904.

"I, Julia P. A. Prather, hereby make my will. I *give* all the property of which I die possessed to my husband Thomas Prather & appoint him my executor to serve without bonds. I give him power to sell any or all of my real estate and personal property without an order from the court. Upon the death of my husband the said Thomas Prather one half of the unexpended portion of *my estate* bequeathed to my husband to be given to my niece Julia Adams, daughter of my brother, Edson F. Adams, the other one-half to be given to the surviving daughters of my brother Edson F. Adams in equal shares. I revoke all or any wills heretofore made by me. I declare this will is entirely written and dated and signed by my hand.

> "JULIA P. A. PRATHER."

In due time proceedings for the probate of this will were commenced in the superior court of Alameda County, but no decree of distribution of the estate was at any time made, and as yet the estate is unadministered.

On April 2, 1913, Thomas Prather was attacked with his last illness, as a result of which he died on April 19th following.

On the date when taken ill Thomas Prather owned, exclusive of any interest in his wife's estate, property of the value of approximately one hundred and six thousand dollars, and owed debts, thereafter proved and allowed against his estate, in the sum of approximately two hundred and thirty-four thousand dollars, all of which had been contracted by him after the death of his wife and all of which were due and payable on said April 2d, and none of which is shown or claimed to have been incurred by him as executor in the care and management of his wife's estate.

During the latter days of his last illness, Prather, by conveyances and assignments without consideration, and by way of gifts, transferred to his brother, Samuel D. Prather, de-

fendant and appellant herein, real and personal property then owned by him and constituting no part of his wife's estate, the value of which was approximately ninety-six thousand dollars, leaving at the time of his death, exclusive of his wife's estate then in process of administration, property of the value of $9,737.85.

His will, executed June 18, 1907, was admitted to probate, and Edson F. Adams, the brother of his deceased wife, named therein as executor, qualified as executor and, under and by virtue of sections 1589 to 1591, inclusive, Code of Civil Procedure, brought this action to obtain a decree declaring said transfers of real and personal property, so made by the testator to his brother, Samuel D. Prather, fraudulent and void as to said creditors of deceased, as well as for incidental relief —the theory of the case being that, since there was a deficiency of assets in the hands of the executor, the transfers of property so made by deceased to Samuel D. Prather were made in contemplation of insolvency and for the purpose and with the intent to hinder and defraud his creditors.

Judgment was entered for plaintiff, from which defendant appeals upon a bill of exceptions wherein, among other alleged errors, is exhibited an order of court denying his motion for a new trial.

The answer filed not only denied all the material facts upon which the fraud was predicated, but alleged affirmatively that at the time of the transfers, as well as at all times thereafter, and at the time of his death, Prather owned and possessed unencumbered property and estate, other than that so transferred to Samuel Prather, of the value of six hundred thousand dollars, conceded, however, by defendant to have been represented by his interest in the property of the estate of Julia P. A. Prather, deceased, then in process of administration. It is likewise conceded that, other than the interest in his deceased wife's estate and exclusive of the property so transferred as gifts to his brother, Samuel D. Prather, Thomas Prather at the time of his death left property not exceeding the sum of ten thousand dollars in value with which to pay creditors whose established claims amounted to upward of two hundred and thirty-four thousand dollars.

If, in fact, Prather, as alleged by defendant, left an unencumbered estate of six hundred thousand dollars subject to the payment of his debts, then manifestly there was no

deficiency of assets within the meaning of section 1589 of the Code of Civil Procedure under which his executor was entitled to maintain the action. Nor since, if such condition existed, there was ample property to meet in due course all demands of the creditors, could the transfers be said to have been made "for the purpose and with the intent to hinder, delay and defraud the creditors" or "in contemplation of insolvency." The only evidence offered by defendant in support of the alleged fact that Prather left this large estate and was not insolvent at the times in question was the will of Julia P. A. Prather, copy of which is hereinbefore set out.

The determination of the questions involved depend largely, indeed almost wholly, upon the interpretation of this will. The contention of the appellant is that by virtue of its terms and provisions, Thomas Prather acquired title in fee simple absolute to the entire estate of his deceased wife, while respondent insists that he took a life estate therein without restriction as to his use of the same.

"A will is to be construed according to the intention of the testator" (Civ. Code, sec. 1317), and that "intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made" (Civ. Code, sec. 1318), which words, in the absence of a clear intention to use them otherwise, "are to be taken in their ordinary and grammatical sense" (Civ. Code, sec. 1324). Unless irreconcilable, "all the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole." (Civ. Code, sec. 1321.) Applying these rules, and having in mind that "a clear and distinct devise or bequest cannot be affected . . . by any other words not equally clear and distinct" (Civ. Code, sec. 1322), we find no difficulty in arriving at the intention of Julia P. A. Prather as expressed in her will. In disposing of her property she recognized her husband as being first entitled to consideration, but in providing for him she gave expression to the thought of her nieces, particularly the one who bore her name, Julia. While the first dispositive clause of the will, namely, "I give all the property of which I die possessed to my husband Thomas Prather . . . ," is clear and, taken alone, admits of no construction other than that an absolute disposal of her estate to him was intended, the second dispositive clause, to wit, "Upon the death of my husband the said Thomas Prather

one-half of the unexpended portion of my estate bequeathed to my husband to be given to my niece Julia Adams . . . , the other one-half to be given to the surviving daughters of my brother Edson F. Adams in equal shares," is equally clear and distinct. (*Estate of Tooley,* 170 Cal. 164, [Ann. Cas. 1917B, 516, 149 Pac. 574].) Hence, unless irreconcilable with the first clause, it should be construed in relation therewith. Read in connection with the first clause, it is clear that in using the words, "unexpended portion of *my estate,*" she had reference to that portion of *her estate* which should remain unconsumed by her husband at his death, and this part of her estate so remaining was, by the terms of the will, addressed not to her husband as legatee, but to the executor of her will, "to be given" in the manner provided by law to her nieces. Thus addressed to the executor the words were not precatory in character but are words of command. (*Estate of Marti,* 132 Cal. 666, [61 Pac. 964, 64 Pac. 1071].) The second clause cannot be construed as the expression of a wish or recommendation of Julia as to the husband's disposition of the unexpended portion of the estate, since she herself makes it the subject of a legacy to her nieces. Her intention was to limit the estate given the husband to such part thereof only as he might in his lifetime expend, consume, or make use of, without in any manner restricting him in the control and disposition thereof for such uses. Subject to such control and disposal for his use and consumption to its complete exhaustion, it was Julia's estate, and, after such carving therefrom as the husband might make for his use and consumption, the portion, if any, remaining at his death and designated by Julia as *"the unexpended portion of my estate"* she made the subject of testamentary disposition, directing it *"to be given"* not by her husband, who as we have seen had no interest therein, but by her executor and the law to the nieces mentioned. The meaning of the second clause of the will, when viewed in connection with the first, in our opinion is as clear and distinct as any other part of the will, and thus construed in relation to the first, effect is given to both and the intention of the testatrix made clear.

Not only is this construction of the will justified by statutory rules of interpretation, but, like interpretations of like provisions of wills have been frequently made by the courts. Thus in the case of *In re Dickinson's Estate,* 209 Pa. St. 59,

[58 Atl. 120], the language of the will was as follows: "All
the rest, residue, and remainder of my estate, real, personal
and mixed, and wherever situated, I give, devise, and be-
queath unto my beloved husband, Henry B. Dickinson, his
heirs and assigns. . . . And should my husband not expend
the whole of my estate, then it is my desire at his death to
give so much of it as remains to my sister, Annie Ulrich, and
my two brothers, Algernon J. Martin, and John J. Martin."
In construing this language, the court said: "The concluding
sentence expresses the desire of the testatrix to give the whole
of her estate, not expended by her husband, to her sister and
brothers. It is her wish to thus give her estate. It is not
her desire or wish or recommendation that her husband shall
give the unexpended estate to them. The estate is not com-
mitted to him with expressions of desire as to how he disposed
of it. The testatrix makes the disposition herself. She gives
him the estate. This carries with it the power to convert,
sell, convey, assign, and transfer. He could have expended
the whole of it, for there is no limitation, restraint, or condi-
tion attached to the bequest. But if he did not consume or
expend it, then what remained at his death she gave to others.
This is the reasonable interpretation of the will. He did not
consume the whole. What remains, therefore, is her estate,
and passes by her will to the legatees." The language quoted
is peculiarly applicable here. In the *Estate of Tooley,* 170
Cal. 164, [Ann. Cas. 1917B, 516, 149 Pac. 574], the wording
of the will considered was as follows: "I give all my prop-
erty at my death to my daughter Logan Mattie Tooley. If
at her death she has neither husband or children I desire any
property that may be left divided equally among my sisters
and brother." In construing the will this court, speaking
through Mr. Justice Shaw, held that the words of disposition
contained in the second clause were equally clear and distinct
as those of the first, and that upon the death of the daughter,
Logan Mattie Tooley, leaving neither husband nor children,
the property of the estate passed to the sisters and brother of
the testatrix, and hence was not subject to testamentary dis-
position by Logan Mattie Tooley. The words "unexpended
portion of my estate to be given" used in the will now under
consideration are certainly more apt and appropriate as dis-
pository words than those "I desire," used in the Tooley
will.

In *Johnson* v. *Johnson,* 51 Ohio St. 446, [38 N. E. 61], the will under consideration gave all property of the testator to his wife with full power to dispose of the same, which clause, considered alone, concededly vested her with absolute title. The will, however, contained a clause to the effect that if at the time of the wife's decease any of the property should remain unconsumed, it should be equally divided between the testator's brothers and sisters. In construing the will the court said: "The plain intention of the testator as shown by the whole will is, that the property is given to the widow to be by her used and consumed, and that while so using and consuming the same she is empowered to bargain, sell, convey, exchange, or dispose of the same as she may think proper, limited, however, in the exercise of such power, to the purpose for which the property is given to her, that is, for her consumption. The devise over to his brothers and sisters and their children is of itself enough to show that the testator intended that his widow should use and consume the property only during her lifetime, and that he did not intend to empower her to dispose of the fee by gift during her life, nor by will at her death. This is clearly the intention of the testator when effect is given to the whole will, and the intention should always govern."

The intention of Julia P. A. Prather as expressed in her will was to give her estate to her husband for his unrestricted use and consumption during the term of his natural life, with power to control, manage, exchange, sell, and dispose of the same, limited, however, in the exercise of such power to the purpose for which the property was given him, viz., his use and consumption thereof. While as to the property, persons dealing with him in good faith would be entitled to protection. as fully and to like extent as though he were absolute owner in fee thereof, *he could not as of right in his lifetime give it away or make it the subject of testamentary disposition at his death.* (*Hardy* v. *Mayhew,* 158 Cal. 95, [139 Am. St. Rep. 73, 110 Pac. 113], and cases there cited.) And herein lies the distinction between the case at bar and those cited by appellant wherein the first taker is vested with the absolute *jus disponendi.* It follows that Thomas Prather's estate has no interest in the unadministered estate of Julia P. A. Prather, deceased, without which the former's estate is concededly insolvent.

This insolvency, in part at least, is due to the gifts of the property here involved made to the defendant, Samuel Prather, during the last illness of the deceased. "A gift made during the last illness of the giver . . . is presumed to be a gift in view of death." (Civ. Code, sec. 1150.) Section 1153 of the Civil Code declares that "a gift in view of death must be treated as a legacy, so far as relates only to the creditors of the giver." Hence, the property so transferred by Thomas Prather during his last illness, must, as to the creditors, since there exists a deficiency of assets with which to meet their demands, be deemed the subject of testamentary bequest, and as such is, therefore, as provided in section 1563 of the Code of Civil Procedure, liable for the debts and obligations of the deceased.

Assuming that, under the will of his wife, Thomas Prather obtained a life estate only, coupled with the powers hereinbefore mentioned, appellant insists that at the time of making the gifts he could, in the exercise of such powers, have used the property of the estate and proceeds of the sale thereof for the purpose of paying his debts. Conceding this to be true, it is answered by the fact that he did not exercise such power which he alone could exercise, but during the latter days of his illness, lasting less than three weeks, conscious as he must have been of his early demise, charged with knowledge that the interest in his wife's estate, from which during his lifetime he was empowered voluntarily to pay his debts, would terminate upon his death, and knowing that, in the absence of such voluntary payment, his creditors who, under the circumstance, were powerless to enforce their demands by process of law, must look to his estate for payment, he gave away the sole and only property possessed by him which at his death could be subjected to the payment of his large indebtedness, and which but for such acts would have been appropriated to such purpose. A man controlling property out of which he may voluntarily pay his debts, if he will, but which for any reason cannot be reached by process of law and thus without his consent subjected to such payment, is nevertheless insolvent. (*Eddy* v. *Baldwin,* 32 Mo. 369; *Schwabacher* v. *Kane,* 13 Mo. App. 126.) The property of Prather's deceased wife was so situated that, conceding he might voluntarily have used it to pay his debts, the circumstances were such that it could not by legal process be reached

after his death by his creditors who, as we have seen, were dependent for payment upon an act, the performance of which he withheld. The effect of his acts, under the circumstances shown, was, as found by the court, to create a condition of insolvency as to his creditors, and ample evidence exists for the finding that the gifts were made in contemplation of the insolvency of his estate and with the intent and purpose of defrauding his creditors. Section 3439 of the Civil Code provides that "every transfer of property . . . with intent to delay or defraud any creditor . . . of his demands, is void against all creditors of the debtor . . . , and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

In Julia's will she described the property devised and bequeathed to her nieces as the "unexpended portion" of the estate remaining at the death of her husband. Appellant insists that the contraction of obligations to pay money, such as the incurrence of an indebtedness, in itself amounts to an expenditure, and that in accordance therewith, notwithstanding Prather received but a life estate in that of Julia, there must be deducted from the portion thereof remaining at his death sufficient property to meet all his outstanding indebtedness. This argument, while ingenious, denies to the word "unexpended" its proper signification and meaning, thus violating section 1324 of the Civil Code, which provides that in the absence of a clear intention to use them otherwise, "words are to be taken in their ordinary and grammatical sense." The word "expended" is defined: "to pay out, or lay out, use up, disburse." It is synonymous with "consume," and it cannot be said that one has paid out, spent, disbursed, or consumed that which remains unappropriated in his possession and control. The part of the estate which during his lifetime he had not disbursed and paid out in the liquidation of his debts, constituted the "unexpended portion" of Julia's estate which, under the view hereinbefore expressed, was devised and bequeathed to the nieces.

Notwithstanding the fact that the question at issue depended for its determination upon the construction of Julia's will, offered by defendant as the sole evidence in support of his affirmative allegation that at the time deceased made the gifts he was not insolvent, but owned and left at his death property of the value of six hundred thousand dollars, appellant insists

that the trial court was without jurisdiction to construe the will. In other words, he is in the anomalous position of predicating error upon his own action in asking the court to construe the will. However this may be, and conceding that a court of equity will not entertain a suit, the sole or chief purpose of which is to obtain the construction of a will, jurisdiction so to do being vested in the probate court, it is nevertheless true that a court of equity is, when necessary to the determination of a question properly before the court, vested with jurisdiction to construe a will as incidental to the equitable relief sought. (40 Cyc. 1839; *Pingrey* v. *Rulon,* 246 Ill. 109, [92 N. E. 597]; *Evins* v. *Cawthon,* 132 Ala. 184, [31 South. 442]; *Rowley* v. *Rowley,* 143 Wis. 325, [127 N. W. 1003]; *Martin* v. *Martin,* 52 W. Va. 381, [44 S. E. 204].) In the instant case the subject of litigation was the validity of the gifts which were made by Thomas Prather, the solution of which question depended upon whether or not, in the making thereof, he impoverished his estate to an extent that rendered it insolvent, which in turn, by reason of the issue tendered by the answer, and as incidental to the main question, depended upon the interpretation of the will. To the extent necessary in determining the rights of the parties the court was authorized to construe the will. Such interpretation, however, is of value only in so far as determinative of the rights of the parties in this case. It cannot be deemed as ousting the jurisdiction of the probate court which, save in so far as the decision is advisory, is left untrammeled in the exercise of its power to construe the will and distribute the property in accordance therewith.

Since the creditors of Thomas Prather are not seeking to subject the property in the estate of his deceased wife to the payment of their claims, we are unable to perceive any force in appellant's contention that they should, before extending him credit, have informed themselves of the condition of his title thereto. For aught that appears to the contrary, they did. But assuming they did not, their rights asserted in this action are unaffected by such fact.

That the judgment is against the interest of the creditors is no concern of the appellant. Suffice it to say that they are not here complaining.

The contention that the action is premature for the reason that plaintiff had not obtained from the probate court an

order of sale of property is without merit. The existence of debts in the sum of upward of two hundred and thirty-four thousand dollars was stipulated by defendant, and the evidence conclusively established the fact that the assets, aside from (or for that matter with) the gifts to the defendant, are insufficient to pay them. These facts warranted the executor in instituting the action. (Code Civ. Proc., secs. 1589–1591; *Field* v. *Andrada,* 106 Cal. 107, [39 Pac. 323].) Moreover, not only by virtue of the law but as provided in the judgment rendered, the executor can only sell such part of the property as may be necessary to pay the debts upon obtaining an order so to do from the probate court, and the surplus of any funds derived from such sale must be returned to the defendant.

To answer in detail the numerous points with which appellant's argument is punctuated would, in view of what has been said, serve no purpose, and unnecessarily prolong the discussion. In a general way they are sufficiently covered in the consideration given to what we deem matters determinative of the appeal.

The judgment is affirmed.

Shaw, J., Sloss, J., Henshaw, J., Melvin, J., and Angellotti, C. J., concurred.