[Civ. No. 20089. Second Dist., Div. Three. July 30, 1954.]

Estate of LUCRETIA W. FOLEY, Deceased. FLORENCE FOLEY, as Administratrix, etc., Appellant, v. JEANNE L'AMOREAUX et al., Respondents.

Sylvester Hoffmann for Appellant.

Harry R. Roberts and Augustus F. Mack, Jr., for Respondents.

SHINN, P. J.—The estate of Lucretia W. Foley was distributed by the court in probate pursuant to the provisions of the will of decedent. Among the assets was the sum of about $8,000 which was distributed one-half to the brother of Lucretia and members of his family[1] and one-half to the living children of John L. Foley, surviving husband of Lucretia. John died seven months after the death of Lucretia and left surviving five children.[2] The cash in question was the net proceeds of the sale in Lucretia's estate of property known as 530 North Howard Street, Glendale, California. This property was disposed of by the will and the rights of the parties in the cash are the same as they would have been in the real property had it not been sold in probate. The admin-

---

[1] Albion B. Woodside, Augusta Woodside, Dorothy Roberts and Albion Woodside, Jr.

[2] Jeanne L'Amoreaux, John George Foley, Daniel Patrick Foley, Collette Thompson and James Louis Foley.

istratrix of the estate of John L. Foley appeals from the order of distribution insofar as it distributes one-half of the cash to members of the Woodside family.

The will consisted of three holographic documents all of which were admitted to probate. The document dated January 29, 1950, which was the latest one, contained two paragraphs which we shall designate as Paragraphs I and II. These read as follows:

## I.

" 'I, Lucretia W. Foley, do hereby declare this to be my last Will and Testament. To my husband, John L. Foley I give my property at 530 North Howard St. Glendale Calif. Should he sell it at any time, one half of the net proceeds should be his and one half divided equally among any of his living children.

## II.

" 'In case of the death of John L. Foley and myself together, ∧at the same time or as a result of an accident ∧the portion of John L. Foley shall be divided one half equally between his living children and one half equally between my brother, Albion B Woodside his wife Augusta Woodside their daughter Dorothy Roberts and ∧son Albion Woodside Jr. ' "

The real property was not sold during John's lifetime. It is the contention of the administratrix that the real property was devised in fee to John if he should survive Lucretia and that his children took the same by right of succession upon his death. It is contended further in no event could the provisions of Paragraph II become operative unless Lucretia and John died at the same time. The Woodsides contend that under a proper interpretation of Paragraphs I and II they were given one-half of the property, or one-half of whatever interest John might have retained from the proceeds of a sale, the same to go to them upon the death of John if it occurred at the same time as the death of Lucretia *or afterwards*. The trial court agreed with this interpretation, and we also agree.

All the other rules for the construction of wills are but supplementary of the cardinal rule that effect must be given to the wishes of the testator as expressed in the will

insofar as it is possible to do so. (*Estate of Akeley*, 35 Cal.2d 26 [215 P.2d 921, 17 A.L.R.2d 647].) ▮ In ascertaining this intention all of the provisions must be considered together and reconciled and given effect to the greatest reasonable extent. (Prob. Code, § 103.)

▮ Lucretia intended John to have the property upon her death for his exclusive use during his lifetime if he desired to retain it. If he should sell it he was to give one-half the net proceeds of the sale to his children. These wishes were clearly expressed in Paragraph I. She also desired to make a disposition of the property or some portion of it upon the death of John. She wished an interest in it to go to her brother Albion and his family. One of the contingencies was that she and John should die together, and at the same time, these two expressions having the same meaning. In that contingency John's children would get one-half and the Woodsides one-half. This desire was clearly expressed. In order to make such a disposition of the property it was necessary to state only the contingency that she and John should die at the same time. It was entirely unnecessary to add "or as a result of accident or sickness." When she added those words she evidently had in mind something other than the simultaneous death of herself and John. If she had added only "as a result of an accident" this would have been consistent with death of the two simultaneously, but after she had written those words and the words "the portion of John L. Foley," etc., she added, with a caret, the words "or sickness." It is entirely unlikely that when she added those words she had in mind only the thought of the death of herself and John at the same time. It is more reasonable to believe that she realized she had omitted to state that she had in mind not only death of both occurring at the same time but also death occurring to herself and John at different times as a result of sickness. She described the interest which was to pass under Paragraph II as "the portion of John L. Foley." This designation was appropriate to describe the interest which John was given under Paragraph I. It could also indicate the money which John might retain in case he survived Lucretia and had sold the property and divided the proceeds with his children. It is true that if the property had been sold, and a division made, John's children would have been entitled to receive, under Paragraph II, more than would be received by the Woodside family, but that was an uncertainty, and might well have been considered by Lucretia as

a condition that was unlikely to occur. This feature of the will has no bearing upon the question of interpretation we are considering.

If Lucretia had intended John's children to have the property, or whatever John retained of it, at the time of John's death she would have said so. If she had intended to disinherit the Woodsides she would have said so. In either of these events there would have been no occasion for Paragraph II and it seems somewhat unreal that she would have provided for her own relatives only in the highly improbable contingency that she and John would die at the same time. She devoted much thought to the preparation of her will and we believe that when she added the words "or sickness" she thereby intended to make provision for her brother and his family whether she and John should pass away at the same time or at different times. Appellant says the words were added as an afterthought, but, whether or no, they expressed a desire which was inconsistent with and in addition to the disposition which was conditioned upon death occurring simultaneously. Lucretia could have expressed her wishes in better form, but the use of imperfect expression in Paragraph II does not render that paragraph less certain than the disposition of Paragraph I, since there can be no doubt as to her intentions.

The contention of appellants that John was given "the entire fee, subject to the conditional limitation or condition subsequent that if he sold it during his lifetime, and while one or more of his children were living, he was charged with delivering one-half of the *net* proceeds to them," could be sustained only by disregarding altogether the provisions of Paragraph II. Although Paragraph I, standing alone, would have accomplished this result Paragraph II cannot be ignored, and when effect is given to both, the conclusion follows that upon the death of John the proceeds from the sale of the property in probate were distributable in accordance with the terms of Paragraph II. Reasoning which supports this conclusion will be found in *Estate of Tooley*, 170 Cal. 164 [149 P. 574, Ann.Cas. 1917B 516], *Adams* v. *Prather*, 176 Cal. 33 [167 P. 534], and cases there cited.

The portions of the decree of distribution appealed from are affirmed.

Wood (Parker), J., and Vallée, J., concurred.